**FRENSLEY v. AMERICAN NAT. BANK of ARDMORE et al.**

No. 18256.   Opinion Filed Nov. 15, 1927.

Rehearing Denied Feb. 14, 1928.

(Syllabus.)

**Mortgages—Foreclosure Sale—Setting Aside Sale—Gross Inadequacy of Price.**

A sale may be set aside for gross inadequacy of price, if accompanied by circumstances showing unfairness in the conduct of the successful bidder, or any circumstances sufficient to raise a presumption of fraud.

Error from District Court, Carter County; Asa E. Walden, Judge.

Action by B. F. Frensley against the American National Bank of Ardmore and others. Judgment for defendants, and plaintiff brings error. Reversed, with directions.

Brett & Brett, for plaintiff in error.

Dolman & Dyer, for defendants in error.

HARRISON, J. This suit, under the amended pleadings, was to set aside a decree of foreclosure of a mortgage lien on a certain 360-acre tract of land, situated in Carter county, and more fully described in the pleadings, and also to set aside the order of sale, order of confirmation, and all other orders affecting said tract.

The circumstances out of which the case grew were that in 1909, one Robert Scivally conveyed by warranty deed the 360 acres involved, to plaintiff in error, B. F. Frensley, and, in the following year, 1910, mortgaged some 6,000 or more acres of land in said county to a mortgage company for $30,000. Later, it developed that the mortgage included the 360 acres which had been deeded to Frensley, and that said mortgage had been placed of record some years before the deed was recorded. The mortgage company, in the meantime, had assigned its mortgage and the American National Bank of Ardmore had become the owner thereof. Thereafter said bank foreclosed the mortgage and had the land sold to satisfy the judgment.

It developed in the foreclosure suit, however, that though Frensley had a deed to the 360 acres of land included in the mortgage, such deed had not been recorded until after the mortgage had been recorded, and the court in decreeing the sale of the land ordered that the land other than that included in the deed be sold first, and in the event it did not bring enough to satisfy the judgment, then the Frensley 360 acres was to be sold. When the first land was sold the American National Bank bid $25,000 for it and was awarded the bid. It does not appear that any other bidder was present or bid upon the land, and the larger tract not bringing enough to satisfy the judgment, the Frensley land was then sold and the American National Bank bid $2,500 for it, and the bid was awarded to the bank. There appears to have been no other bidder at this sale.

Frensley, upon learning of these proceedings, brought this suit, to set aside the decree of foreclosure and all other orders affecting his tract of land, on the grounds that the price was grossly inadequate, and that he had never been served with summons, and had no knowledge of the foreclosure suit and been given no opportunity to defend his rights in said suit, and had no knowledge that the land had been sold to satisfy the mortgage, and had therefore been deprived of an opportunity to appear at the sheriff's sale and protect his rights by bidding in the land. And on the further grounds that after the land had been sold, but before it had become known to him that it had been sold, he had offered to the American National Bank to pay off and satisfy the $30,000 mortgage, and all interest, costs, and attorneys' fees in the event a foreclosure was ever had and the land sold. In fact, the land had been sold at that time, but he alleged that he did not know it and that the bank informed him that it had not, whereupon he proposed to the bank that, in the event it should become necessary to sell it, if the bank would notify him, he would pay off the entire mortgage, interest, costs, and attorneys' fees and take the land in order to protect his own interests and would make a bond that

he would fulfill his promise, and that the bank declined to accept such proposition, knowing that it had already been sold. Later, when in the county treasurer's office for the purpose of paying taxes on the land, he learned that it had been sold, and upon learning such facts brought this suit.

The bank answered, alleging that service of summons had been had upon Frensley's attorney of record in the case, and that such attorney, W. D. Potter, of the firm of Cruce & Potter, had voluntarily appeared and filed an answer in the case; and further denied that it had ever promised to notify Frensley when the land was to be sold, and denied that Frensley had ever offered to pay off the judgment if it would release the land.

Frensley filed a reply to the bank's answer, denying that Cruce & Potter, or either of them, were his attorneys of record in the case, or had any authority to appear and file an answer in the case, or had ever been employed to represent him in the foreclosure suit; and alleged that, though such attorneys may have assumed to represent him, they had not protected his interest as they should have done.

Upon these issues the court rendered judgment in favor of the bank, and Frensley has appealed here.

The case presents two decisive issues of fact:

(1) Whether the price was grossly inadequate.

(2) Whether the foreclosure suit and the sheriff's sale were accompanied by circumstances showing unfairness or any circumstances sufficient to raise a presumption of fraud. These were disputed issues and have necessitated an examination of the testimony in order to determine the weight of the evidence.

In the first place, it appears that the summons was issued to defendant Frensley, but the summons contained the following words in parenthesis, to wit: "Serve on Cruce & Potter"; and the summons was served on Cruce & Potter, and never was mailed to defendant Frensley, who then resided in Fort Worth, Tex., and on account of illness was confined to his room and to his bed. Besides this, the sheriff was directed to serve Cruce & Potter as attorneys of record before any record had been made on Frensley's part in the case. The bank had assumed to serve Cruce & Potter with copy of summons to Frensley, as attorneys of record, when in fact at that time not a word of record had been made in behalf of Frensley; there was no attorney of record at that time, for he had no notice of any necessity for an attorney, and no record had been made.

In the next place, it does not appear that copy of summons was left with Cruce & Potter or that they demanded a copy, and does not clearly appear that they ever forwarded any copy of the summons to Frensley.

Mr. Potter testified in behalf of the bank in this case, claiming that he had sent a letter to Mr. Frensley at Fort Worth, Tex., informing him of the case, but Frensley and his entire family at Fort Worth denied that any such letter had ever been received, or any other notice of the pending litigation, and the circumstances, in our judgment, corroborate their denial.

The attorney, Potter, claimed that the defendant Frensley and his nephew came to his office and employed him in the case, but the Frensleys denied this, and the circumstances of his ill health and inability to attend corroborate their denial.

The Frensleys admitted, however, that they had previously employed Potter in other litigation and had some communication with him in reference to such other litigation. Potter evidently was mistaken as to his employment in the mortgage foreclosure case, for we do not believe he would have willfully misstated the facts; he evidently got this case confused with other litigation in which he had been employed, because this record shows conclusively that the attorney, Potter, did not diligently protect Frensley's interest in the foreclosure proceedings nor in the sale of the land. It conclusively appears, on the other hand, that Frensley's interests were neglected, both in the foreclosure trial and in the foreclosure sale.

Furthermore, the Frensleys contend that they proposed to the bank that in the event the land was to be sold and they were notified of the fact, they would make a bond for the payment of the entire principal, interest, costs, and attorneys' fees, and bid in the land.

The president of the bank denied that any such proposition was made to him, but the circumstances seem clearly to refute his denial, and at the opening of this case the Frensleys renewed the tender of the

entire amount of principal, interest, costs, and attorneys' fees, if the mortgage be assigned to them, and the bank declined to accept it.

As to the inadequacy of price, the president of the bank himself testified that he considered the land worth $75,000, and the record shows that he bid it in for $25,000. We observe that the attorneys for the bank asked the question whether he had been able to sell it for $75,000, which was answered in the negative, but the banker indicated that he had made no attempt to sell it, and the record fails to show that any attempt to sell it had been made.

This, in connection with the bank's refusal to release the land to Frensley upon Frensley's payment of the principal, interest, costs, and attorneys' fees due in the case, we think, very clearly shows an inadequacy of price. All these circumstances, being to the advantage of the bank and to the material detriment of Frensley, when taken together, show an unfairness which in equity raises a clear presumption of fraud, and brings the case within the rule announced in Wheeler-Motter Merc. Co. v. Wright, 64 Okla. 97, 166 Pac. 184, which is as follows:

"A sale may be set aside for gross inadequacy of price, if accompanied by circumstances showing unfairness in the conduct of the successful bidder, or any circumstances sufficient to raise a presumption of fraud."

Practically the same rule was announced in McLain Land & Inv. Co. v. Swofford Bros., 11 Okla. 429, 68 Pac. 502. See, also, Ordway v. Farrow (Vt.) 118 Am. St. Rep. 951-960; Gray v. McKnight, 75 Okla. 268, 183 Pac. 489; Winters v. Okla. Cement Co., 65 Okla. 132, 164 Pac. 965; 15 R. C. L. p. 761; Clark v. Clark (Mont.) 210 Pac. 93; 1 Bigelow on Frauds, chap. 6, sec. 2.

In view of the foregoing authorities and all the circumstances of this case, the judgment of the trial court was against the clear weight of the evidence, and is therefore reversed, with directions to set aside all judgments, orders, and decrees pertaining to the Frensley 360 acres and to set aside the sheriff's deed thereto and to decree the title to said tract in plaintiff in error, B. F. Frensley.

Reversed.

BRANSON, C. J., and PHELPS, LESTER, HUNT, CLARK, and RILEY, JJ., concur. HEFNER, J., being disqualified, did not participate.

Note—See 42 C. J. p. 235, §1876; 16 R. C. L. p. 97; 3 R. C. L. Supp. p. 543; 4 R. C. L. Supp. p. 1044; 5 R. C. L. Supp. p. 870; 6 R. C. L. Supp. p. 949.