## AMERICAN BANK & TRUST CO. OF ARDMORE, OKLA., et al. v. FRENSLEY.

No. 21100. Feb. 27, 1934.

Rehearing Denied March 27, 1934.

534

Potter & Potter, for plaintiffs in error.

Stephen A. George, for defendant in error.

ANDREWS, J. On the 18th day of October, 1929, the district court of Carter county, Okla., rendered a judgment in favor of the defendant in error against the American National Bank of Ardmore, Okla., Frank Knappenberger, and C. F. Washburn, for the possession of certain described real estate, quieting the title thereto, and for the rental value of the use and occupation of the land. That judgment was based on the finding therein recited that the plea of res judicata relied on by the plaintiff in that action, the defendant in error herein, was well taken; "that all matters involved herein as to the question of ownership and title to the lands described in plaintiff's petition and hereinafter described, have heretofore been finally and fully judicially determined by a court of competent jurisdiction, to wit, by the judgment and decision of the Supreme Court of this state in cause No. 18256, in that court, wherein plaintiff's testator, B. F. Frensley, now deceased, was plaintiff in error and the American National Bank of Ardmore et al, were defendants in error, and the judgment of this court made and entered herein on the 28th day of March, 1928, in pursuance of the mandate and judgment of the Supreme Court aforesaid; and that said judgment and dcision is final and binding and constitutes and is res adjudicata of the issues involved herein, and that said judgment is a complete bar to the defendant's claim to the ownership of said lands." From that judgment the defendants in that action, the plaintiffs in error herein, appealed to this court.

Herein the plaintiffs in error contend that B. F. Frensley never had any title to the property in controversy; that no issue as to the title of the property was raised in the trial court in the former action, and that the judgment referred to in the findings of fact hereinbefore quoted was void for the reason that it was beyond the issues raised by the pleadings or proof in the former action.

The issue presented requires an examination of the record in the former proceeding. That record shows that the American National Bank commenced an action, numbered 10052, in the district court of Carter county, Okla., against Robert F. Scivally and others, including B. F. Frensley; that in its petition it alleged, among other things, the execution by Robert F. Scivally and wife, of certain notes and mortgages of real estate securing the payment thereof, and that B. F. Frensley had or claimed to have some right, title, or interest in and to the real estate, but that whatever claim of title B. F. Frensley had was inferior to the plaintiff's claim and subsequent to the plaintiff's mortgage; that an answer thereto was filed for B. F. Frensley, in which it was alleged that B. F. Frensley claimed title to the land which is involved in the present action, through a deed from Robert F. Scivally, which was dated prior to the execution of either of the mortgages held by the bank, and the prayer was that the title of B. F. Frensley be quieted; that a judgment was rendered therein for the foreclosure of the mortgage first in time, in which it was recited that B. F. Frensley was the owner of the land involved in the present action, subject only to that mortgage, and in which the order of sale provided for a sale so as to protect the title of B. F. Frensley against the claims of the bank, in so far as it could be protected under that finding of fact; that a judgment was rendered therein for the foreclosure of the mortgage second in time, in which it was recited that the defendant Hamilton Carhart Cotton Mills had a valid judgment lien on all land involved in that action, "except those lands above described found to be the property of B. F. Frensley", and that the defendant William Echols Dry Goods Company had a valid judgment lien upon all land therein described, "except those lands above found to be the property of the defendant B. F. Frensley," that judgment providing for a sale of the land in satisfaction of the mortgages of the plaintiff in that action by "offering first the lands other than those as above found to be the property of the defendant B. F. Frensley," and for a sale of the land in satisfaction of the first mortgage without regard to the ownership of B. F. Frensley; that the land was sold in conformity with the judgments and pur-

chased by the bank; that thereafter B. F. Frensley filed therein a vertified petition, in which he petitioned the court

"* * * to vacate, set aside and hold for naught an order approving sheriff's sale made and entered herein on the 21st day of September, 1923, approving the sale of certain real estate described in said order, which order is hereby referred to and by reference made a part of this petition as fully as if copied herein in full; and further this defendant petitions the court to vacate, set aside, and hold for naught an order approving sheriff's sale made and entered herein on the 22nd day of November, 1923 * * *" —that thereafter he filed an amendment to his petition, in which he alleged that he had not been served with summons in the original action; that thereafter the bank answered the petition and amendment of B. F. Frensley and alleged, with reference to the judgment in the foreclosure proceedings, that "* * * judgment in said action was duly entered on the 13th day of February, 1923, adjudicating the rights of the parties and decreeing the foreclosure thereof"; that the foreclosure proceedings were regular in every respect, and that it vested the title to the land in the bank. It denied the other allegations of B. F. Frensley and it prayed that B. F. Frensley take nothing and "that its title to said property be quieted and for all such other and further relief as to the court may seem just and equitable"; that on the trial of the proceeding to vacate those orders, a witness called on behalf of B. F. Freensley was asked if he know whether or not B. F. Frensley was the owner of the land claimed by him, whereupon the attorney for the bank objected, as follows: "We object to any evidence touching that matter, as that is res judicata", and the court sustained that objection; that the deed under which B. F. Frensley claimed title was offered in evidence, and the attorney for the bank objected "* * * for the reason it is res judicata" as to the parties to this tract of land, "it is part of the proceedings in the original case"; that a judgment was rendered in which it was found that the bank had asked for affirmative relief and that the title to the property be quieted in it, and in which the issues were adjudged in favor of the bank and against B. F. Frensley, that B. F. Frensley take nothing by reason of the proceedings, and that the title to the land was quieted in the bank against B. F. Frensley; that from that judgment B. F. Frensley appealed to this court, and this court, in an opinion, reversed the judgment of the trial court (Frensley v. American Nat. Bank of Ardmore, 129 Okla. 164, 264 P. 188), "with directions to set aside all judgments, orders, and decrees pertaining to the Frensley 360 acres and to set aside the sheriff's deed thereto and to decree the title to said tract in plaintiff in error, B. F. Frensley"; that the trial court, upon receipt of the mandate, construed the direction of this court and rendered a judgment in accordance with its construction thereof; that no appeal was taken therefrom; that the attorneys in the case O. K.'d the journal entry of that judgment; that by that judgment the trial court set aside the judgments, orders, and decrees only in so far as they pertained to the Frensley 360 acres of land; that it did not set aside those judgments, orders, and decrees in so far as they pertained to the 6,000 acres of land other than the Frensley 360 acres; that the bank had taken possession of the land under a sheriff's deed and that it had conveyed the same to Frank Knappenberger and C. F. Washburn; that notwithstanding the judgment of this court and the judgment of the trial court, they remained in possession of the land, and that the present action was instituted for the possession of the land, for the value of the use and occupation thereof, and for the quieting of the title as against Frank Knappenberger and C. F. Washburn, who were not parties to the original action.

When B. F. Frensley instituted the proceedings to vacate the orders that had been made in the foreclosure proceedings, he based his claim of a right to have the same vacated upon a claim of ownership of that portion of the land herein claimed by him. Under the provisions of section 560, O. S. 1931:

"A judgment shall not be vacated on motion or petition, until it is adjudged that there is a valid defense to the action on which the judgment is rendered. * * *" Holt v. Spicer, 67 Okla. 60, 166 P. 149; Myers v. Chamness, 102 Okla. 131, 228 P. 988; Stevens v. Bruner, 125 Okla. 101, 256 P. 722.

Under that rule of law no court was authorized to vacate the orders in the foreclosure proceedings on the application of B. F. Frensley if B. F. Frensley had no interest in the property, for if he had no interest in the property, he was in no wise concerned with whether or not a mortgage on the property had been foreclosed. One of the issues presented to the trial court in the

proceedings to vacate the orders was whether or not B. F. Frensley owned any interest in the land claimed by him. He had alleged that he was the owner thereof. The trial court denied the prayer of B. F. Frensley to vacate the orders, and when the cause came to this court on appeal, one of the issues presented to this court was whether or not B. F. Frensley owned any interest in the land claimed by him. The trial court in the foreclosure proceedings had held that he owned that land subject to one of the mortgages. On the appeal to this court in the proceedings to vacate the orders, the bank, in its brief, said:

"In the first place, they do not attack the judgment rendered in the case whereby their relative rights were determined, but merely attack the sale held pursuant to the judgment."

In the petition for rehearing in that case, it contended that Mr. Potter had protected the interests of Mr. Frensley, and in support of that contention it said:

"The answer as filed by Mr. Potter for Mr. Frensley * * * sets up Mr. Frensley's interest and the judgment in the case * * * decrees that Frensley's land is subject to the first mortgage but free from the lien of the second mortgage."

Nowhere in the proceedings to vacate the orders did the bank contend that B. F. Frensley did not own the land claimed by him, but, during the proceedings to foreclose the mortgages and during the proceedings to vacate the orders in foreclosure, B. F. Frensley claimed title to the land and asked that his title thereto be quieted. Upon the record before this court, this court decreed that B. F. Frensley was the owner of the land in question and directed the trial court to quiet his title thereto.

When the mandate of this court was received by the district court of Carter county, that court proceeded to enter judgment on the mandate, vacating, setting aside, and holding for naught the orders made in the foreclosure proceedings. We quote therefrom as follows:

"It is further ordered, adjudged, and decreed that the judgment entered by the court on the 11th day of December, 1925, refusing to vacate the orders and judgments above set out, be and the same is hereby reversed, vacated, and held for naught, and that the title of the said B. F. Frensley be declared free, clear, and discharged of all incumbrances by reason of a certain mortgage executed by Robert F. Scivally and Mattie Scivally, to the Dickerson-Reed-Randerson Company, and any and all judgments, orders, decrees, and deeds entered and executed in the foreclosure of said real estate under said mortgage, and be declared free, clear, and discharged from all right, title or interest or claims of the said American National Bank, a corporation, or its successors and assigns, and that all costs of this action be taxed against the plaintiff, the American National Bank."

The journal entry of judgment received the O. K. of the attorneys for the parties to the action, and that judgment became final. The decree of this court and the judgment of the trial court quieting the title of B. F. Frensley in the land claimed by him were not beyond the issues in that case, and that judgment is not void, as contended by the plaintiffs in error. It was final and conclusive upon the parties thereto and those in privity with them. In the trial of a cause by a court of competent jurisdiction, its decree upon the merits is conclusive between the parties, upon all the facts adjudicated, together with all the material facts which might have been presented as constituting the claim or defense; and such issues of fact so adjudicated, or which might have been presented for consideration, cannot thereafter become the subject-matter for litigation between the parties, or those in privity in a collateral proceeding. Baker v. Vadder, 83 Okla. 140, 200 P. 994; Freeland v. Dolen, 84 Okla. 286, 203 P. 182; Stutsman v. Williams, 87 Okla. 64, 209 P. 406; Colby v. Eason, 91 Okla. 214, 217 P. 202; Tidal Refining Co. v. Tivis, 91 Okla. 189, 217 P. 163; United States Fidelity & Guaranty Co. v. Harmon, 92 Okla. 167, 218 P. 682; Board of Education v. First Nat. Bank, 95 Okla. 275, 219 P. 98; Dugan v. Wilms, 93 Okla. 89, 219 P. 651; Dickson v. Mackey, 108 Okla. 11, 233 P. 423; Fooshee v. Craig, 110 Okla. 189, 237 P. 78, and Sapulpa Petroleum Co. v. McCray, 4 Fed. (2d) 645.

A defense sought to be interposed in the present action was that B. F. Frensley did not own the land. The time and the place to have made that contention was in the original petition to foreclose and in the answer to the petition of B. F. Frensley to vacate the orders. No such contention was made. It is a general rule that a valid judgment for a plaintiff is conclusive, not only as to defenses which were set up and adjudicated, but also as to those which might have been raised. 34 Corpus Juris, p. 856. That text cites decisions to that effect from almost all of the states, including the following Oklahoma decisions: U. S.

Fidelity, etc., v. Harmon, supra; Good v. Bank, 88 Okla. 110, 211 P. 1051; Gressler v. Brown, 79 Okla. 170, 192 P. 417; Ely Walker Dry Goods Co. v. Smith, 69 Okla. 261, 160 P. 898; Engle v. Legg, 39 Okla. 475, 135 P. 1058. While there are certain exceptions to that general rule, none of them is applicable to the facts shown by the record in this case, for this record shows that the plea of the plaintiffs in error in this case would have been a sufficient defense to the petition of B. F. Frensley to vacate the orders made in the foreclosure proceedings. The plea of want of title in B. F. Frensley was based on a decree of the district court of Johnston county, Okla., in an heirship proceeding. It was contended that that adjudication was final and conclusive. There can be no question but that if the decree of the district court of Johnston county was an adjudication, final and conclusive, it could have been pleaded as a defense to the petition of B. F. Frensley to vacate the orders in the foreclosure proceedings. The failure to plead the decree at a time when the pleading thereof would have been a defense to the action to vacate the orders in the foreclosure proceedings amounted to a waiver of that claim. Mundell v. Colony Merc. Co., 153 Okla. 79, 4 P. (2d) 1059; St. Louis, S. F. Ry. Co. v. Stuckwish, Adm'x, 137 Okla. 251, 279 P. 683; Brockman v. Roberts, 89 Okla. 57, 213 P. 545; Wade v. Hope and Killingsworth, 89 Okla. 64, 213 P. 549, and Hall v. Morris, 96 Okla. 39, 219 P. 903.

When a fact has been determined in the course of a judicial proceeding, and a final judgment has been rendered in accordance therewith, it cannot be again litigated between the same parties without virtually impeaching the correctness of the former decision, which, from motives of public policy, the law does not permit to be done. The estoppel is not confined to the judgment, but extends to all facts involved in it as necessary steps, or the groundwork upon which it must have been founded. It is allowable to reason back from a judgment to the basis on which it stands, upon the obvious principle that, where a conclusion is indisputable and could have been drawn only from certain premises, the premises are equally indisputable with the conclusion. Johnson v. Gillett, 66 Okla. 308, 168 P. 1031; Adams v. State ex rel. Mothersead, Bank Com'r, 133 Okla. 194, 271 P. 946.

The defenses sought to be interposed by the attorneys in this case were not interposed by those who were the attorneys in the former case. Herein it is asserted for the first time that the bank held a deed from Robert F. Scivally. Had the title to the property been in the bank by reason of such a deed, a plea thereof would have constituted a defense to the petition to vacate the orders in the foreclosure proceedings. No such plea was made.

We are not unmindful of the decision of this court in Nero v. Brooks, 116 Okla. 279, 244 P. 588, and the other cases cited by the plaintiffs in error. They are in accordance with the statement quoted from 34 Corpus Juris, p. 945. They are not applicable, however, to the facts shown by the record in this case. Herein, under the statute and under the decisions of this court, it was necessary for Mr. Frensley to show that he had some interest in the land before he could have the sale of the land vacated. He alleged ownership. This court and the trial court adjudged that he was the owner. After permitting that judgment to become final, the plaintiffs in error cannot contend that they are not bound by it.

We find no error in the judgment of the trial court, and it is in all things affirmed.

RILEY, C. J., and OSBORN, BAYLESS, BUSBY, and WELCH, JJ., concur. CULLISON, V. C. J., and SWINDALL, J., dissent.

———

CULLISON, V. C. J. (dissenting). Plaintiff brings this suit alleging he is the legal and equitable owner of the land in dispute.

Plaintiff commenced the action 10 years after a court of competent jurisdiction had adjudged the legal and equitable title in said land to be in Kizzie Harlan, Cillian Carr, and Adam Yota, legal heirs of the estate of Eli Loman. Plaintiff bases his right to recover on a quitclaim deed executed by one Robert F. Scivally, who claimed some interest in the land, based upon a deed executed by one Henry Loman, who had been adjudged to have no interest therein.

The plaintiff alleges:

"That heretofore, to wit, on or about the 13th day of October, 1909, one Robert F. Scivally was the legal and equitable owner in fee simple * * * of said described premises. * * *"

Plaintiff in his first count says:

"That heretofore, to wit, on or about the 13th day of October, 1909, one Robert F. Scivally was the legal and equitable owner in fee simple and in possession of said described premises; and on or about said date said Robert F. Scivally sold and conveyed

said described property to the plaintiff's testator by an instrument in writing, in form a quitclaim deed."

It is apparent that plaintiff bases his claim to the land involved upon a quitclaim deed executed by Scivally to plaintiff's testator October 13, 1909.

It is our view that plaintiff's testator acquired no title to the land under the quitclaim deed executed by Scivally to the plaintiff's testator.

### Heirship Proceedings.

The record in this case discloses that the land in dispute is a part of the Indian allotment of Eli Loman, deceased.

Solomon Owens, administrator of the estate of Eli Loman, deceased, filed a petition in the county court of Johnston county, Okla., to determine heirship and for the distribution of the estate of the said Eli Loman, deceased. On August 26, 1909, a final hearing was had in said matter:

"And now on this, the 26th day of August, 1909, comes the parties to this proceeding by their attorneys of record, and thereupon this action came on for final hearing upon the petition of Solomon Owens, administrator of the estate of Eli Loman, deceased, and upon the answer and petitions of the several claimants to said estate, and the answer of Henry Loman, by his next friend, S. T. Treadwell, claiming to be the son and sole heir at law of the said Eli Loman. * * *"

The county court decreed Henry Loman to be the legal heir of Eli Loman, deceased.

On the 25th day of October, 1910, the district court of Johnston county, Okla., reversed the judgment of the county court of said county, and decreed the title to all of said estate to be in Adam Yota, Kizzie Harlan, and Cillian Carr. The judgment of the district court of Johnston county, Okla., reads in part:

(Sixth paragraph of said judgment): "That said Henry Loman was not born in lawful wedlock and is not the legitimate child of said Eli Loman and is not entitled to inherit the estate of the said Eli Loman, deceased, or any part thereof, for the reason that under the laws of the Choctaw Nation in force at the time of the said pretended marriage it was unlawful for a citizen of the Choctaw Nation to marry a negro."

(Seventh paragraph of said judgment of the district court): "The court further finds that Kizzie Harlan, Adam Yota, and Cillian Carr are the next of kin and the only heirs at law of the said Eli Loman, deceased, and are entitled to inherit, in equal shares, the estate of said Eli Loman, including the lands hereinbefore described as pro-vided by the laws in force in said jurisdiction, to wit: chapter forty-nine (49) of Mansfield's Digest of the Laws of Arkansas."

The court further said, in the **concluding part of the eighth paragraph:**

"The court further finds that all claimants of said estate and all persons claiming adversely to the said Kizzie Harlan, Adam Yota, and Cillian Carr have no right, title or interest, in or to said estate or the lands hereinbefore described and allotted to said Eli Loman, deceased, or any part thereof.

"It is further ordered, adjudged, and decreed by the court that claimant, Henry Loman, is not the lawful heir of the said Eli Loman, and that he take nothing herein and that he has no right, title, or interest, in or to any land allotted to said Eli Loman, or any estate belonging to said Eli Loman or any part thereof."

### Derivation of Plaintiff's Title.

The record in this case shows that on the 16th day of September, 1909, **Henry Loman** deeded the land to Pierce, and on the 20th day of September, 1909, Pierce and wife deeded the land to Robert F. Scivally, and on the 13th day of October, 1909, Scivally conveyed his interest in the land by quitclaim deed to B. F. Frensley, plaintiff's testator.

It will be observed that all the conveyances of the land in question from Henry Loman down to and including the quitclaim deed from Scivally to B. F. Frensley, plaintiff's testator, were executed in **September and October, 1909.**

It is clear that plaintiff herein predicates his interest in said land on the interest claimed by **Henry Loman.**

It should be remembered that thereafter, to wit, on the 25th day of **October, 1910,** the district court of Johnston county reversed the judgment of the county court of Johnston county, and held Henry Loman had no interest in or to said land, from which judgment of the district court Henry Loman never perfected an appeal to this court; that said judgment of the district court of Johnston county became final and binding upon all parties thereto and upon all parties claiming any interest in said land.

The judgment of the district court of Johnston county having become final and the court having held that Henry Loman was not a legal heir of Eli Loman, deceased, Henry Loman could not acquire an interest in or to any of the estate of Eli Loman, held: The conveyance of any interest therein by Henry Loman to other parties is illegal and void.

It therefore follows as a legal conclusion that the deeds from Henry Loman to Pierce, and from Pierce to Scivally, and from Scivally to plaintiff in 1909, are illegal and void, and conveyed no interest whatsoever in said land to Pierce, Scivally, or this plaintiff.

A deed purporting to convey an interest in land must, in law, convey a legal title. Where it appears an instrument of conveyance, such as a deed, purporting to convey title, is in litigation at the time of the execution of said deed,—a transfer cannot become effective until all the rights of the parties to the litigation have been finally adjudicated by a court of competent jurisdiction.

The execution of the quitclaim deed by Scivally to the plaintiff's testator before the judicial determination of the rights of the heirs to the estate, conveyed no title whatsoever in this land to the plaintiff, and the effect would be the same if the deed had been a warranty.

The first and only question, in this entire litigation, to be by this court determined, is, "Who is the legal holder of the title to the land involved herein?"

The law specifically provides if, during the proceedings, it appears the claimant is not the owner of the land, the proceedings must be dismissed.

When Scivally executed his quitclaim to this plaintiff, the title to the land was in litigation in the district court of Johnston county, Okla., and at the conclusion of said litigation the court found and held that Scivally's grantor had no interest whatsoever therein.

### Title in Grantor.

It is a well-settled principle of law that:

"There should be some title or interest, in law or equity, in the grantor to enable him to convey, and, except under a power of appointment so to do, a grantor can convey no greater estate than he has, or in which he has an inalienable title or interest. It follows that a deed from a person without title or interest which he may convey is inoperative as a conveyance, and the grantees, under a release and quitclaim, will take nothing where the grantor has no interest which he can convey." Williams v. Conroy (Colo.) 83 P. 959 (involves tax deed); Mixon v. Wallis (Tex. Civ. App.) 161 S. W. 907, and authorities therein cited.

The grantor, Henry Loman, having been adjudged to have no interest whatsoever in the land involved, had no legal right to convey said land to Pierce.

Neither could subsequent purchasers basing their title upon the claim of Henry Loman acquire any interest in the land.

The record further shows that Scivally did not have possession of the land at the time he made the deed to plaintiff.

The plaintiff herein makes no pretension or claim that he ever had any interest in the land involved, except the interest he attempted to acquire by virtue of a quitclaim deed from Scivally to plaintiff's testator.

Plaintiff alleges in his petition that he acquired an interest in the land October 13, 1909 (supra), from Scivally (R. 28); but, notwithstanding the fact the deed from Scivally to plaintiff bore date of October 13, 1909, it appears that plaintiff had but little faith in the validity of the quitclaim deed executed by Scivally to him and did not have the same recorded until June 5, 1920, more than 10 years after the execution thereof.

The record shows both plaintiff and Scivally knew and understood that the title to the land involved was in litigation, at the time of the execution of the quitclaim deed, and there being no fraud alleged or proved by plaintiff that Scivally misrepresented the facts to him at the time of the the execution of the quitclaim deed, there would be no relief in law for plaintiff affecting an interest in the land.

The judgment of the district court of Johnston county having become final, and the court having held the title to the land herein involved to be in Kizzie Harlan, Cillian Carr, Adam Yota, no legal title could pass to Scivally from Henry Loman and no legal title to the land involved could be conveyed by Scivally to this plaintiff.

Said judgment is conclusive and binding upon all parties to the action, and cannot be attacked, reviewed, or set aside in a collateral action.

### Judgments not to Be Attacked Collaterally.

Black on Judgments (1st Ed.) sec. 245:

"Where the court has jurisdiction of the parties and the subject-matter in the particular case, its judgment, unless reversed or annulled in some proper proceeding is not open to attack or impeachment by parties or privies in any collateral action or proceeding whatsoever.

"The doctrine of this court, and all courts of this country, is firmly established that if the court in which the proceedings took place had jurisdiction to render the judgment which it did, no error in its proceedings which did not affect the jurisdiction will render the proceedings void, nor can such errors be considered when the void

judgment is brought collaterally into question. This principle is not merely an arbitrary rule of law established by the courts, but it is a doctrine which is founded upon reason and the soundest principles of public policy. 'It is one,' says the court in Virginia [Lancaster v. Wilson, 27 Grat. 624, 629] 'which has been adopted in the interest of the peace of society and the permanent security of titles. If, after the rendition of a judgment by a court of competent jurisdiction, a further period has elapsed when it becomes irreversible for error, another court may in another suit inquire into the irregularities or errors in such judgment, there would be no end to litigation and no fixed established rights. A judgment, though unreversed and irreversible, would no longer be a final adjudication of the rights of litigants, but the starting point from which a new litigation would spring up; acts of limitation would become useless and nugatory. Purchasers on the faith of judicial orders would find no protection. Every right established by a judgment would be insecure and uncertain and a cloud would rest upon every title.'

"If the sentence last quoted seems somewhat extravagant, at least it will serve to show the substantial reasons upon which the rule rests and the inflexibility with which it is held by the courts. * * *

"Justice Miller of the United States Supreme Court in McGoon v. Scales, 9 Wall. 23, said: 'We subjoin some further extracts from some of the best and most satisfactory opinions upon this subject. It may now be regarded as a legal maxim that when a judgment is offered in evidence collaterally, in another suit its validity cannot be questioned except for want of jurisdiction in the court that rendered it. Paul v. Smith, 82 Ky. 451.' "

### Judgments of Inferior Courts.

Black on Judgments (1st Ed.) sec. 246, says:

"To allow the records of courts of justice, their judgments and decrees to be questioned and held to be inoperative in the same tribunal that made them or in other tribunals, would be subversive of judicial authority and destructive of public and private justice. The law is too true to itself, and too thorough in its life and vigor to allow of such absurdities. * * *"

Id., section 251:

"A judgment at law cannot be impeached collaterally in equity. And conversely, the validity of a decree rendered by a court of equity cannot be impeached in a collateral action at law. A judgment of the state court, no question as to its jurisdiction being involved, cannot be overhauled or corrected in a collateral proceeding in a federal court.

"The courts of the United States cannot lawfully treat as nullities the judgments of the courts of the several states rendered in suits where the latter have jurisdiction of the cause and the parties, even if they are founded upon an erroneous construction of the Bankrupt Act or any other statute of the United States. * * *" Railroad v. Ferry Co., 108 U. S. 18, 1 Sup. Ct. Rep. 614.

Id., section 250:

"But it belongs to the present connection to advert to the well-recognized rules that the judgments and decisions of an inferior court can in no wise be assailed indirectly on account of errors or irregularities not affecting the jurisdiction.

"Thus the regularity or legality of a judgment rendered by a justice of the peace in a case falling within his competence and in which he had jurisdiction of the parties so long as it is not reversed or annulled in some proper proceeding is not open to collateral attack or impeachment. * * *"

It should be observed the only question for judicial determination in the first action (heirship proceedings), was the title to the land involved herein, or, who are the legal heirs of the Eli Loman estate?

A court of competent jurisdiction found and held that Kizzie Harlan, Cillian Carr, and Adam Yota were the legal heirs to said estate, and no appeal was ever taken from that judgment.

Plaintiff in the instant case, viz., American Bank & Trust Co. et al. v. Tom B. Frensley, as Executor, etc., having based his claim of an interest in the land in dispute upon the claim of Henry Loman who was declared to have no interest in the land, could not—in law or equity—ever acquire a legal title to said land.

It is a well-settled principle of law that a final judgment is the fixed and ultimate determination of the rights of parties.

After a judgment has become final, no action can be maintained which will impair the conclusiveness or binding effect of said judgment. (Authorities too numerous to mention.)

B. F. Frensley, one of the defendants herein, never recorded his quitclaim deed from Scivally executed in 1909, until June 5, 1920, more than 10 years after the execution thereof.

In 1911, nearly two years after the Johnston county district court had decreed Adam Yota, Kizzie Harlan, and Cillian Carr to be the sole and legal heirs of Eli Loman, Robert F. Scivally purchased the entire interest in the Eli Loman estate from said heirs.

Defendant Frensley does not base or claim his right of recovery upon the title or conveyance of the land to Scivally by the

legal heirs, but bases his claim solely upon the interest claimed by Henry Loman. There is not a word or intimation in the record that defendant Frensley acquired any right to the land in controversy after Scivally purchased the land from the legal heirs.

After Scivally purchased the interest of the legal heirs, he took possession of the land and proceeded to develop the same for oil, gas, and agricultural purposes. In doing so he borrowed large sums of money from various persons and disposed of some of the land by deed, lease, or otherwise. Scivally, the real defendant herein, was unsuccessful in his enterprises and became insolvent.

The plaintiff bank having acquired an interest in the land as disclosed by the record, brought this action in 1923 against Scivally and wife to recover on the notes and mortgages executed by Scivally and wife to various persons, which notes and mortgages had been assigned to these plaintiffs, and plaintiff in its petition prayed:

"Wherefore, plaintiffs pray judgment against Robert F. Scivally, and wife; first, for $30,000, interest and attorney's fees,— second, for $68,400, with interest and attorney's fees, the whole amount aggregating $105,240."

The court rendered judgment for plaintiff bank, but found B. F. Frensley had some interest in the land, subject, however, to a mortgage of $30,000 in favor of plaintiff bank.

It would be a waste of time and space to devote any discussion to the transactions between plaintiff bank and Scivally, the whole matter having been properly adjudicated in plaintiff's favor by all the courts, except as to the finding of the trial court that B. F. Frensley had some interest in the land, supra.

### Instruments Executed by Strangers to Title.

"Deed must on its face confer some right or interest in the land, and since an instrument executed by a stranger to the title does not pass any such right or interest it therefore does not constitute a cloud." 5 R. C. L., section 31, page 659.

Frensley was a stranger to the title to the land involved herein. He was claiming under a quitclaim deed executed by a stranger to the title; both Frensley and his grantor were strangers to the title. His deed clearly shows on its face that both Frensley and his grantor, Scivally, were strangers to the title. The title to the land having been adjudicated to be in other parties, by a court of competent jurisdiction from which no appeal was taken, the quitclaim deed executed by Scivally to Frensley passed no right or interest in or to the land involved. (See Haggart & McMasters v. Chapman & Dewey Land Co. (Ark.) 92 S. W. 792, 7 Ann. Cas. 333, and note; 5 R. C. L., sec. 32.)

There is nothing in the entire record of the three actions herein involved showing that Frensley ever acquired any interest whatsoever from any of the legal owners and holders of the land involved herein.

The quitclaim deed upon which Frensley bases his title is void upon its face and does not convey any interest in the land to him and is not even a cloud upon the title to the land held by these plaintiffs.

It was necessary for the court to find from the record some evidence reasonably tending to show that Frensley based his right or interest claimed upon a conveyance executed by the legal holders of the title to the land before the court could legally or equitably adjudge Frensley to have any interest therein.

Keeping in mind the record in the case, it was entirely unnecessary for plaintiff to make Frensley a party defendant in the action filed by them, and the district court of Carter county committed reversible error, when it found that Frensley had some interest in the land.

### Cloud on Title.

Under the facts and circumstances in the instant case, the claim of defendant Frensley could not arise even to the degree of a cloud upon the title or interest of plaintiffs herein.

"In an action to quiet title, the purpose of the action is the integrity of the title. In short (such action may therefore be properly considered as brought for the recovery of an estate or interest in real property)." Johnson v. Samuelson (Neb.) 117 N. W. 470.

### Instrument Void on Its Face.

"If an instrument is void on its face so that an action based upon it would fall of its own weight without extrinsic evidence to show its invalidity, or when, if such evidence is produced, it must inevitably show the invalidity of such title and destroys its effect, it does not constitute a cloud and the complainant must, if he would have such title removed, show some special circumstances which entitle him, in the view of a court of equity, to a decree for that purpose; or stated in another way, a Court of Chancery has jurisdiction to cancel an instrument and thereby remove a cloud from the complainant's title, only where such instrument is

prima facie valid if its recitals are sustained. It has been said that if a deed is void on its face, then there is no occasion for equitable relief, because it convicts itself whenever brought into a judicial focus, and no title passes thereby, and if clearly void on its face, it casts no cloud upon the title. Under this rule courts have refused to grant relief in cases involving conveyances, ineffective levy of attachment where the invalidity would appear upon an attempt to enforce it, and invalid judgments or decrees. * * *" Section 33, 5 Ruling Case Law.

### Burden of Proof (5 R. C. L. sec. 45):

"The plaintiff in an action to try title to real estate alleging that he is seised in fee, has the burden of proving the allegation, and he must prove title in himself if the answer denies his title or if the defendant claims title adversely." Polk v. Rose (Md.) 89 Am. Dec. 773.

### Recovery on Strength of Plaintiff's Title.

"It is a rule of general application that the plaintiff (defendant herein) must recover, if at all, on the strength of his own right and not on the weakness of his adversary's claim." Di Nola v. Allison (Cal.) 76 P. 976; Cooper v. Shannon (Colo.) 85 P. 175, and Empire Real Estate, etc., Co. v. Beechley (Ia.) 114 N. W. 556, 28 L. R. A. 42.

### Decree.

Section 49, 5 R. C. L.:

"In declaring the rights and interests of the parties, the court should act unequivocally. In an action to ascertain and determine the title therefor, if a judgment conveying title is void upon its face, the court should so declare. * * *"

### Limitations upon Decree:

It is said in 5 Ruling Case Law, section 50:

"Equity cannot, in the absence of a permissive statute, grant affirmative or preventive relief to a defendant appearing only by answer praying no relief excepting the determination whether he has an estate, interest, or right in the property." McMillan v. Davenport (Mont.) 118 P. 756.

We deem it unnecessary to set out and discuss in detail the entire proceedings had before the trial court.

The trial court very properly held the title and interest acquired by plaintiff bank in the land to be prior and superior to the interest claimed by defendant B. F. Frensley, and rendered judgment accordingly.

We are of opinion and hold, the trial court erred in holding Frensley had an interest in the land, for the following reasons:

(1) Defendant never acquired and does not claim to have acquired any title to the land, from the legal and adjudicated owners thereof.

"Where a deed on its face does not show that plaintiff (defendants herein) acquired title from the legal holders thereof, the defendant is held to be a stranger to the title, and further held such a claim does not constitute even a cloud upon the title." 5 R. C. L., sec. 31, page 659.

(2) Frensley and his grantor were both strangers to the title.

(3) In the absence of legal and competent evidence that Frensley had acquired a legal title to the land, the court was without jurisdiction to adjudge Frensley had any title.

(4) "It is a rule of general application that the plaintiff must recover, if at all, on the strength of his own right and not on the weakness of his adversary's claim." Di Nola v. Allison (Cal.) 76 P. 976, supra, and other cases.

(5) "The plaintiff (defendant herein) in an action to try title to real estate alleging that he is seized in fee, has the burden of proving the allegation, and he must prove title in himself if the answer denies his title or if defendant claims adversely." Polk v. Rose (Md.) 89 Am. Dec. 773.

On November 15, 1927, this court, speaking through Justice Harrison, handed down an opinion reversing the judgment of the district court of Carter county.

The title to said case is B. F. Frensley, Plaintiff in Error, v. American National Bank of Ardmore et al., Defendants in Error, No. 18256, 129 Okla. 164, 264 P. 188.

It is our view, under the facts and circumstances in the instant case, that this court was without jurisdiction to render said judgment.

Having set out in detail the entire history and record of the heirship proceedings in the county and district courts of Johnston county, and no appeal having been taken therefrom, and having expressed our views of the entire litigation involved herein, and having cited the law in support of our holdings, supra, we think it could serve no good purpose to again set out said proceedings in discussing the want of jurisdiction in this court to render said judgment.

We have shown, supra, as, we think, beyond contradiction, that the legal title to all land involved in this litigation was vested in Kizzie Harlan, Cillian Carr, and Adam Yota, at the time B. F. Frensley, one of the defendants herein, obtained a quitclaim deed from Robert F. Scivally, to wit, October 13, 1909.

B. F. Frensley makes no claim that he

ever acquired title to any of the land involved herein from any of the adjudicated heirs above named; but bases his right to recover solely upon a quitclaim deed executed by Robert F. Scivally, who, at the time said quitclaim deed was executed, had no interest in any of the land involved.

There is not a word of evidence in this entire record even tending to prove that either of the heirs ever conveyed any part of the land to B. F. Frensley.

At the time Frensley obtained his quitclaim deed from Scivally, the title to the land was in litigation. This fact was well known to both Frensley and Scivally. Both parties based their hope of obtaining some interest in the land upon a deed executed by Henry Loman, who was adjudged by a court of competent jurisdiction to have no interest whatsoever in the land, and no appeal was ever perfected from the judgment of the court so decreeing.

We have heretofore held, supra, that Scivally acquired no interest in the land based upon his deed from Henry Loman, and that Frensley, his grantee, could acquire no greater interest than that of his grantor.

This principle of law is so well adhered to and so well understood by court and counsel, that we will not burden this court by citing other authorities than those heretofore cited.

We have further held that the district court of Carter county erred in holding that Frensley had some interest in the land involved, based upon the deed from Henry Loman.

A full and complete record, from start to finish, of this entire litigation, together with the evidence adduced at the trial, having been presented to the trial court, we think was sufficient to warrant the court in holding that Frensley had no interest in the land, and in so far as Frensley was concerned the action should have been dismissed as to him, and failing so to do the trial court committed reversible error.

After much laborious study of this entire litigation, and with due respect for the opinions of this court, we are compelled to say this court overlooked in the instant case the sole and controlling legal proposition involved in the entire litigation, viz.,

"A grantee can acquire no greater interest in property than that of his grantor."

The record and evidence in this case clearly shows that Scivally had no interest in the land at the time he executed the quitclaim deed to this defendant (plaintiff in error).

The entire record of all the proceedings had in this litigation from first to last came before this court on appeal. This court seems to have based its judgment upon the ingenious allegations of plaintiff in error's petition, to strike certain orders of the trial court, and not upon the law or evidence in the case.

The law, pleadings, and evidence adduced at the trial of this cause were amply sufficient to warrant this court in affirming the judgment of the lower court as to the interest of plaintiff bank, and this court should have reversed the action of the lower court (holding Frensley had some interest in the land), and should have directed the lower court to dismiss the action as to Frensley.

### Nonsuit and Dismissal.

Section 56, 5 R. C. L.: "Since the object of the action is to settle title and determine as between the parties all conflicting claims to the property in controversy, and to decree to each such interest or estate therein as he may be entitled to, it follows that if the plaintiff fails to show any legal interest in the property in controversy and as to which he asserts title, he must fail altogether and cannot complain of the judgment of nonsuit. * * * Where the plaintiff wholly fails in every respect to prove title to the property as alleged, the action is properly dismissed." Hebden v. Bina (N. D.) 116 N. W. 85.

Where questions of fact have been adjudicated by the district court (on appeal from the county court) and the appellant fails to appeal or to bring up the record disclosing the questions of fact, the Supreme Court will not review the case and determine what facts have been adjudicated by the inferior court, but will dismiss the cause for the want of jurisdiction.

Section 49, 5 R. C. L., provides:

"* * * In declaring the rights and interests of the parties, the court should act unequivocally. In an action to ascertain and determine the title therefor, if a judgment conveying title is void upon its face, the court should so declare. * * *"