MOORE et al. v. HARJO et al.

HARJO et al. v. MOORE et al.

Nos. 2585, 2576.

Circuit Court of Appeals, Tenth Circuit.

July 26, 1944.

John L. Goode, of Shawnee, Okl. (Mark Goode, of Shawnee, Okl., on the brief), for appellants and cross-appellees.

Allen G. Nichols, of Wewoka, Okl. (Chas. B. Rogers, of Tulsa, Okl., on the brief), for appellees and cross-appellants.

Before PHILLIPS and BRATTON, Circuit Judges, and KENNEDY, District Judge.

BRATTON, Circuit Judge.

Louis Harjo, a full-blood enrolled Seminole Indian, was allotted a tract of land in Seminole County, Oklahoma. The allottee died intestate, owning the land, unmarried, without issue, and survived by his mother, a sister, Nellie White, nee Harjo, and three brothers, Chilley Ross, Eplumke Harjo, and Jimmie Harjo, all full-blood enrolled Seminole Indians. Jimmie Harjo died intestate, survived by his wife, and a son, Edmond Harjo. The mother of the allottee died intestate and without surviving husband. Her heirs were Nellie White and Edmond Harjo. In 1908, Nellie White and Eplumke Harjo executed a warranty deed purporting to convey the entire fee title to the land to James C. Lillard, and the deed was approved by the county court of Seminole County. In 1909, Lillard and wife executed their warranty deed purporting to convey the land to Willard Johnston; and by mesne conveyances, executed between 1909 and 1916, inclusive, Johnston acquired all of the interests in the land, except that of Edmond Harjo. Johnston went into possession of the land in 1909, claiming ownership of the whole thereof, made improvements upon it, placed it in cultivation, and from that time until his death in 1939 rented it to tenants and

collected the rents. In 1919, Edmond Harjo, then a minor, by his legal guardian, instituted in the District Court of Seminole County an action in partition against Johnston, alleging that he owned an undivided three-eighths interest in the land and that he and Johnston were in possession as co-tenants. He sought partition and an accounting, but no action for ejectment was joined. Johnston answered, denying every allegation contained in the petition, and pleading that he was the owner in fee simple of the whole estate in the land. In March, 1920, judgment was entered in the action determining that Harjo owned an undivided one-eighth interest and that Johnston owned an undivided seven-eighths interest, directing that it be partitioned, and appointing commissioners. The land was sold, Johnston became the purchaser, a sheriff's deed issued to him, and it was placed of record in December, 1920. In 1924, Johnston and wife executed an oil and gas lease covering the land to C. Y. Audd; two days later Audd assigned the lease to Kingwood Oil Company; in 1926, Kingwood transferred to Roxana Petroleum Company, now Shell Oil Company, Inc., an undivided one-half interest in the lease; oil was developed in 1927; Kingwood operated the premises for oil and gas purposes until November, 1934; Shell conducted the operations from that time until March, 1939, at which time it transferred its interest to The Carter Oil Company; and Carter has conducted the operations since.

Harjo attained his majority in 1927. In 1928, he filed in the District Court of Seminole County an action against Johnston, Shell, and certain assignees of royalty interests, but Kingwood was not joined as a party. He alleged that he owned and was entitled to the possession of an undivided one-half interest in the land, and prayed for a decree establishing such ownership and right of possession, and for an accounting. Johnston was not served with process. The action was removed to the United States Court for Eastern Oklahoma, became No. 3941-Equity, and was later dismissed as to all defendants except Shell. The trial proceeded as between Harjo and Shell. Shell offered in evidence the decree entered in the action for partition, the proceedings pursuant to the decree, and the sheriff's deed. Thereupon, at the request of Harjo, the trial was suspended in order that he might institute and prosecute in the state court an action to vacate and set aside the judgment rendered in the partition action. In July, 1931, he instituted in the Superior Court of Seminole County an action against Johnston, Shell, and others, alleging that at the time of the entry of the judgment in the action for partition, and at all times subsequent thereto, he was the owner in fee of an undivided one-half interest in the land by right of succession and inheritance, and that the judgment was void for fraud. The cause was removed to the United States Court, was remanded, Kingwood was joined as a party defendant, and an amended petition was filed in which Harjo claimed a two-thirds interest in the land. He did not specifically ask for possession, but did pray that the decree in the partition action be declared void, that the defendants be enjoined from asserting any right, claim, or interest against him by virtue of such judgment or any subsequent orders or proceedings based upon it, that his interest in the land be determined, and for general equitable relief. The superior court entered judgment determining that Harjo inherited only a one-eighth interest in the land, that no fraud was perpetrated in the entry of the judgment in the partition action, that Kingwood and Shell were innocent purchasers, and that Harjo take nothing. While the case was pending on appeal, Harjo and Johnston died, and substitutions of parties were effected. The judgment was reversed and the cause remanded with directions to the superior court to enter judgment determining that the judgment in the action in partition was void, decreeing the inheritable interest of Harjo to be an undivided three-eighths, subject to the dower interest of his mother, and enjoining the defendants from asserting any rights against Harjo by virtue of the void judgment, Harjo v. Johnston, 187 Okl. 561, 104 P.2d 985. The mandate was spread, and in August, 1940, the superior court entered judgment pursuant to it and no question is raised in respect to the judgment failing to conform to the mandate.

In September, 1940, Shell and Carter instituted in the United States Court for Eastern Oklahoma an action against Kingwood, the administratrix of the estate and the heirs of Harjo, and others, to quiet title to an undivided one-half interest in the oil and gas leasehold estate, and that action became No. 353-Civil. Kingwood answered and cross-complained; and the Harjo administratrix and heirs filed an answer and cross-complaint in which they alleged their ownership of an undivided three-eighths

interest in the land, and the rents, issues and profits, and pleaded fully the proceedings in the action in partition, the proceedings in the action in the superior court, the reversal by the supreme court, and the entry of the final judgment pursuant to the mandate. The administrator of the estate of Johnston, and his heirs at law, intervened and filed an answer and cross-complaint in which they pleaded title by prescription, and prayed that it be quieted.

The court consolidated causes No. 3941-Equity and No. 353-Civil. Extended findings of fact and conclusions of law were made, and judgment was entered adjudicating among other things that the heirs of Harjo, and certain assignees, were the owners, subject to administration, of an undivided three-eighths interest in the land; that the heirs of Johnston were the owners, subject to administration, of an undivided five-eighths interest, subject to the oil and gas lease owned by Kingwood and Carter, and subject to certain conveyances of royalty interests; and providing that the administratrix of the estate of Harjo, and the assignees, recover from Kingwood and Shell, the sum of $352,873.62, from the administrator of the estate of Johnston Kingwood, and Shell, the sum of $84,138.97, and from Shell the sum of $10,957.72, all with interest from March 26, 1940, and fixing the primary and secondary liability of the defendants as among themselves. The three oil companies, and the administrator of the estate and the heirs at law of Johnston perfected separate appeals, and the administratrix of the estate and heirs at law of Harjo perfected a cross-appeal. Pending appeal, settlements were effected insofar as the oil companies were concerned, and their appeals were dismissed. The appeal of the administrator of the estate and the heirs of Johnston on one side, and the cross-appeal of the administratrix of the estate and heirs at law of Harjo on the other, remain.

■ Appellants contend that the final decree in the action in the superior court merely vacated and annulled the judgment in the partition action and enjoined the defendants from claiming any right or interest in the land under such judgment. It is argued that the action was not one for the recovery of real property. It was not an action for the recovery of real property. Possession was neither sought nor awarded. And it was preliminary, intended to clear the way for the obtaining of complete relief in the action then pending in the United States Court. But it was wider in scope and effect than merely to vacate and annul the judgment in the partition action, and to enjoin the defendants therein from claiming any right in the land under such judgment. Harjo pleaded specifically that at the time of the entry of the judgment in the partition action and at all times subsequent thereto he was the owner of such interest. He further pleaded that the defendants claimed some right, title, interest, or estate in the land adverse to his interest and estate, and that by reason of his interest and estate the judgment should be vacated, annulled, and held for naught, and the defendants enjoined from asserting any right under it. And he specifically prayed that his interest in the land be ascertained and determined by the court. In short, he tendered in issue his title and invoked the jurisdiction of the court to determine it. And the court determined the issue by adjudicating that his inheritable interest was an undivided three-eighths interest, subject to the dower interest of his mother.

■ Appellants further contend that the decree of the superior court did not adjudge or determine that the heirs of Harjo were then vested with present title to an undivided three-eighths interest in the land, but only that Harjo had inherited such interest. Certain statements made by Harjo in his assignments of error and in his briefs in the supreme court, and the refusal of the superior court to enter a decree which he tendered, are relied upon to show that Harjo did not regard the action as one for the recovery of land or to quiet title, and that the court did not intend by the decree to do more in respect of title than to adjudge that the inheritable interest was three-eighths. Where a judgment or decree is ambiguous or obscure, and fails to express the final determination of the court with clarity or accuracy, reference may be had to the pleadings, the verdict, the findings, and the entire record for the purpose of ascertaining what was determined. Reaves v. Turner, 20 Okl. 492, 94 P. 543; Barnett v. Worrell, 46 Okl. 60, 148 P. 133; Hale v. Independent Powder Co., 46 Okl. 135, 148 P. 715; Hawkins v. Ferguson, 79 Okl. 273, 193 P. 35; Miller v. Madigan, 90 Okl. 17, 215 P. 742.

■ But the decree of the superior court is not ambiguous or obscure. It referred in the present tense to the interest in the land. It nowhere spoke directly or indirectly in

the past tense in determining the interest. It adjudged and determined that the inheritable interest *"is found to be* an undivided three-eighths interest * * *." That language is clear and negates the suggestion that it was intended merely to determine that at some time in the past Harjo had inherited the interest. The word "inheritable" was used in its definitive sense, relating solely to the nature and character of the interest, and having no reference whatever to the past rather than present existence of such interest. We fail to find any basis for the contention that it was the purpose or effect of the decree merely to determine that at some past time Harjo inherited the interest.

■ Taking up the contention of appellants that they are vested with title by prescription to the three-eighths interest in the land involved, Subdivision 4, Section 93, Title 12, Okl.St.1941 provides that an action for the recovery of real property not thereinbefore provided for shall be brought within fifteen years after the cause of action shall have accrued, and not afterwards; Section 94 provides that if a person entitled to bring an action for the recovery of real property is under legal disability at the time the cause of action accrues, he may bring it within two years after the disability is removed; and Section 333, Title 60, provides that occupancy for the period prescribed by civil procedure, or any law of the state as sufficient to bar an action for the recovery of the property, confers a good and sufficient title by prescription. The recording of the deeds from Nellie White and Eplumke Harjo to James C. Lillard, purporting to convey the entire estate in the land, the recording of the deed from Lillard and wife to Johnston, the open, notorious, adverse, and exclusive possession of the land by Johnston, claiming under color of title to the whole thereof, the payment of taxes, the making of improvements, and the collection of the rents, issues, and profits, amounted to an ouster of Harjo, and set the statute in motion for the purpose of creating title by prescription in Johnston. International Land Co. v. Smith, 103 Okl. 101, 229 P. 601; Hurie v. Quigg, 121 Okl. 80, 247 P. 677; Connor v. Thornburgh, 140 Okl. 16, 282 P. 122; Harjo v. Mathis, 170 Okl. 523, 41 P.2d 92. And the minority of Harjo did not prevent the ouster or the commencement of the running of the statute of limitations. It merely allowed by legislative grace two years after attaining his majority within which to assert his rights in a proper action. Wirick v. Nance, 178 Okl. 180, 62 P.2d 997; Pearson v. Hasty, Okl.Sup., 137 P.2d 545, 147 A.L.R. 232.

■ But whatever prescriptive title Johnston acquired by virtue of the deeds from Nellie White and Eplumke Harjo to Lillard, the deed from Lillard and wife to Johnston, and open, notorious, and adverse possession by Johnston under color of such title, had fully ripened prior to the time of the institution of the action in the superior court, unless it was interrupted; and it was not pleaded in that action, either in defense or by way of cross-action. It is the general rule that where existing facts constitute a defense to a pending action and also constitute an affirmative cause of action against the plaintiff, the defendant may at his option tender them or reserve them for an independent action. And if he reserves them, a judgment against him in the action does not foreclose him from subsequently asserting them as an affirmative action. Virginia-Carolina Chemical Co. v. Kirven, 215 U.S. 252, 30 S.Ct. 78, 54 L.Ed. 179; Pierce v. National Bank of Commerce, 8 Cir., 268 F. 487.

■ Sometimes however facts which are both defensive and constitute an independent cause of action are necessarily negatived by the judgment. In some instances, it is implicit in the judgment that no such facts exist. In some circumstances, the facts constituting the defense and also the affirmative cause of action are so intimately and inextricably intertwined with the plaintiff's cause of action, that a judgment for plaintiff necessarily adjudicates their nonexistence, even though not pleaded either by way of defense or cross-action; and in such circumstances, they cannot be subsequently pleaded, either in defense or affirmatively. In the action in the superior court, Harjo pleaded his title, pleaded that it was superior to any claim, interest, or right of Johnston, and prayed that his title be determined. He sought an adjudication that he was the owner. If he owned the interest, Johnston did not. If Johnston owned it by prescriptive title, Harjo had no title. Both did not own it at the same time. Johnston was required to plead his prescriptive title in that case in order to save it from the operation of the decree. He failed to do so, under penalty of losing the right to plead it in this action. Morarity v. Calloway, 134 Ind. 503, 34 N.E. 226; Pier-

son v. Conley, 95 Mich. 619, 55 N.W. 387; Cowles v. Kyd, 91 Neb. 274; 135 N.W. 1010; Steele v. Stevenson, 104 Kan. 469, 179 P. 304; Cf. Baker v. Leavitt, 54 Okl. 70, 153 P. 1099; American Bank & Trust Co. v. Frensley, 167 Okl. 533, 30 P.2d 883. To permit the heirs of Johnston now to assert with success title by prescription would be to hold that Harjo was not the owner at the time of the entry of the decree in the action in the superior court, notwithstanding the solemn adjudication that he was such owner. That we are not free to do.

■ Appellants urge a distinct claim of title by prescription. It is argued that under subdivisions 1 and 2 of Section 93, Title 12, Okl.St.1941, Johnston acquired a good title by prescription not later than February, 1929, five years after the recording of the sheriff's deed executed in the partition action, plus two years after Harjo attained his majority. Subdivision 1, supra, provides that an action for the recovery of real property sold on execution, brought by the execution debtor, his heirs, or any person claiming under him, by the title acquired after the date of the judgment, shall be brought within five years after the date of the recording of the deed; and subdivision 2, supra, provides that an action for the recovery of real property sold by an executor, administrator, or guardian, upon an order or judgment of a court, brought by the heirs or devisees of the deceased person, or the ward or guardian, or any person claiming under any or either of them, by title acquired after the date of the order of judgment, likewise shall be brought within five years after the date of the recording of the deed. But the sale made in the partition action was not a sale on execution. Neither was it a sale made by an executor, administrator, or guardian. Section 1513, Title 12, Okl.St.1941, provides that if none of the parties to a partition action elect to take the property at the appraised value, the court shall enter an order directing the sheriff to sell such property in the same manner as in sales of real estate on execution. That provision concerns itself with the manner of making a sale in partition, and directs that such a sale shall be made in the same manner as a sale on execution, but it falls far short of providing that a sale in partition shall be the same or the equivalent of a sale on execution. We are clear in the view that subdivisions 1 and 2 do not have any relation to the time within which action shall be brought for the recovery of real property sold in a proceeding for partition.

■ But let it be assumed for present purposes that such statutory provisions do apply in case of a sale made in an action for partition. Whatever prescriptive title Johnston acquired under color based on the sheriff's deed had fully ripened prior to the institution of the action in the superior court, unless it was interrupted; and it was not pleaded in that action, either by way of defense or cross-action. Therefore appellants cannot be heard to plead it here. Morarity v. Calloway, supra; Pierson v. Conley, supra; Cowles v. Kyd, supra; Steele v. Stevenson, supra; Cf. Baker v. Leavitt, supra; American Bank & Trust Co. v. Frensley, supra.

■ Appellants rely on still a third claim of title by prescription. It is contended that title vested in them in 1935, fifteen years after the recording of the sheriff's deed executed in the partition action. The institution of the action in the superior court before the statute had run, and the entry of the final decree therein determining in effect that Harjo owned an undivided three-eighths interest in the land, was tantamount to an adjudication that Harjo and Johnston were tenants in common and interrupted any adverse possession of Johnston or his heirs against Harjo. Stewart v. Stewart, 83 Wis. 364, 53 N.W. 686, 35 Am.St.Rep. 67.

■ The cross appeal presents the question of interest. The court awarded interest from March 26, 1940, on the several amounts adjudged to be due the administratrix of the estate of Harjo, and the two assignees. Settlements having been made with the oil companies, it is now contended by the appellants on the cross appeal that interest on the judgment against the administrator of the estate of Johnston should have been computed from the respective dates of monthly settlements for oil run. The pertinent part of Section 6, Title 23, Okl.St.1941, provides that a person who is entitled to recover damages certain or capable of being made certain by calculation, and the right to recover is vested in him on a particular day, is entitled to interest thereon from that day; and Section 64 provides that the detriment caused by the wrongful conversion of personal property is presumed to be the value of the property at the time of the conversion, with interest from that time. Under these provisions, it is clear that in an action for the breach

of an express or implied obligation to pay money, if the amount is certain or capable of being made certain by calculation, and the right of plaintiff to recover at a certain time is reasonably clear, interest should be allowed from that time. Blackwell Oil & Gas Co. v. Mid-Continent Petroleum Corporation, 182 Okl. 588, 79 P.2d 227. But here the interest of Harjo in the land and the oil produced therefrom was not certain, at least until the opinion of the supreme court was announced, on March 26, 1940. Until then, the judgment in the action in partition adjudicating that he owned only an undivided one-eighth interest in the land, and the sheriff's deed purporting to convey to Johnston the entire estate in the land, both regular on their face, were in force and effect. Until the judgment was overturned by the supreme court, they not only rendered the right of Harjo to recover extremely doubtful, but stood as a barrier to any recovery on his part. In the circumstances, the court was well warranted in awarding interest only from that date. Blackwell Oil & Gas Co. v. Mid-Continent Petroleum Corporation, supra; Lumbermen's Supply Co. v. Neal, 189 Okl. 544, 119 P.2d 1017.

The judgment is affirmed.