## PATRICK J. BANAGHAN *vs.* MARY A. MALANEY.

Worcester.    September 28, 1908. — October 21, 1908.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Equity Jurisdiction,* Specific performance, Damages. *Equity Pleading and Practice,* Bill.

The plaintiff in a bill in equity seeking specific performance of an agreement to sell and convey certain real estate does not have an absolute right to a decree ordering specific performance merely because the agreement was made by a defendant competent to make it, was sufficient upon its face and was not obtained by such fraud or misrepresentation as would give the defendant a right to avoid it; but the granting of such a decree rests in the sound discretion of the court, and, where the judge also finds facts tending to show that, in inducing the defendant to make the agreement, the plaintiff was guilty of unfair conduct or took any inequitable advantage of the defendant, he may refuse the decree, although the plaintiff was not under any fiduciary relation to the defendant.

At the hearing of a suit in equity for specific performance of an agreement in writing by the defendant to convey certain real estate to the plaintiff, the judge found that the agreement was made by the defendant, who was legally competent to make it, that it was sufficient on its face, and that it was not obtained by such fraud or misrepresentation as would give the defendant a right to avoid it; but he also found that, because of unfair and inequitable conduct on the part of the plaintiff in procuring the agreement, specific performance should be refused, and dismissed the bill. The plaintiff appealed and contended that the suit should have been retained for the assessment of damages. There was no prayer for damages in the bill, and it did not appear that the plaintiff had requested that his damages be assessed. *Held,* that the appeal should be dismissed, since the court was not bound to retain the bill for the assessment of damages.

BILL IN EQUITY, filed in the Superior Court for the county of Worcester July 15, 1907, seeking specific performance of an agreement by the defendant to convey certain real estate to the plaintiff.

There was a hearing before *Wait,* J., who filed a memorandum containing the following findings of facts:

"I find that the plaintiff and defendant entered into the contract alleged in the bill; that the defendant was competent to make the contract, was the owner of the premises dealt with, was not induced by any fraud or misrepresentation to sign the contract, and, at law, is bound thereby.

"William Banaghan, a real estate broker and dealer, brother

and agent of the plaintiff, suspecting a desire on the part of the New York, New Haven and Hartford Railroad Company to acquire the defendant's real estate and other parcels in the neighborhood for the purpose of connecting the tracks of its New England and Providence divisions, visited the defendant on Saturday, July 13, 1907, and, without disclosing this suspicion, persuaded the defendant to agree to sell to the plaintiff, and agreed on behalf of the plaintiff to buy the defendant's real estate. The defendant, who was unable to read and write, signed the agreement [to convey] by her mark. The price stated was the fair market value of the premises, possibly a little higher price, apart from any demand arising from the plans of the railroad company. . . . No one but William Banaghan and the defendant were present during the negotiations and at the execution of the agreement, which was written out by Banaghan in her presence and read over to her before she signed it by her mark.

" The defendant was an old woman of no experience in dealing in real estate and unsettled and unstable in her dealing. Her business affairs for many years had generally been conducted after consultation with James S. Brown, Treasurer of the Worcester Five Cents Savings Bank, which held the first mortgage on the premises, or with one Sprague, an old friend, once her employer; and she had been warned by Brown never to sell her property without first consulting him. . . . In the course of negotiations with Banaghan the defendant told him of her understanding with Brown and her desire to confer with him. Indeed, at first, she refused to sell. Banaghan, however, urged her to deal with him on the spot, and the fact that both Banaghan and she were Irish undoubtedly helped bring about the contract.

" This trade was concluded about noon. Banaghan paid down $25 in bills and went away, leaving no copy of the agreement with her. . . . About four o'clock in the afternoon of the same day, one Moore, employed by the railroad company to secure options on the lands it wanted, called upon the defendant for that purpose. On his opening negotiations the defendant told Moore she had sold to Banaghan that day for $1,900. Moore asked if she had signed any paper, and on being told she had,

asked to see it. She told him she had no copy; and, in answer to the question, said further that the paper was not witnessed. Moore, thereupon, told her she was not bound by the agreement to sell, and offered her $2,200 to sell to him. She refused. He then offered her $2,400, of which $50 was to be paid down, and to protect her against any claims of Banaghan under the agreement with him. She thereupon took the $50, and signed an agreement to convey to Moore. . . .

" Moore told the defendant to return to Banaghan the $25 he had given her; and on July 15, 1907, she [attempted to do so, but he refused to accept the money, and] the plaintiff immediately filed this bill. . . .

" On August 8, 1907, a conservator of defendant's property was appointed by the Probate Court on her petition, who was made a party to this bill, appeared by counsel, and, in person, attended at the hearing before me.

" I do not find any disposition on the part of the defendant's counsel, the conservator or her advisers to assist the plaintiff; while the defense to the bill has been carried on chiefly by the counsel for Moore, really in the interest of the railroad company.

" The plaintiff's agent and the defendant were not of equal mental ability; the defendant was aged, inexperienced, wavering; the agent did not disclose his conjectures as to the railroad's plans; he did persuade her to act without first consulting her friends and advisers, and played upon her racial prejudices in plaintiff's behalf; and although I am convinced that, in the absence of the action by Moore and knowledge of the railroad company's intentions, the defendant and her advisers would have made the conveyance to the plaintiff and have been properly satisfied with the price agreed on, in view of these facts I think the plaintiff is not in equity entitled to the specific performance prayed for, but should be left to his actions at law for damages against the defendant and the railroad company if any he has."

A decree dismissing the bill accordingly was entered, and the plaintiff appealed.

The case was submitted on briefs.

*B. W. Potter & P. Potter*, for the plaintiff.

*E. Brown & C. A. McDonough*, for the defendant.

SHELDON, J. The judge had a right, upon his findings, to refuse to give the plaintiff a decree for specific performance of his agreement with the defendant. It is true that the agreement was good and sufficient upon its face; the defendant was legally competent to make it; and it was not obtained by such fraud or misrepresentation as would give the defendant a right to avoid it. But this is not enough to entitle the plaintiff as a matter of right to enforce specific performance. His right to this remedy is not an absolute one. It rests in the sound discretion of the court. It may be refused to one who has been guilty of any unfair conduct or has taken any inequitable advantage of the other party to the agreement, even though there is no sufficient ground for the rescission of the agreement. *Curran* v. *Holyoke Water Power Co.* 116 Mass. 90. *Western Railroad* v. *Babcock,* 6 Met. 346, 352. This rule has been recognized in the later decisions of this court. *O'Brien* v. *Boland,* 166 Mass. 481. *Thaxter* v. *Sprague,* 159 Mass. 397. And see the cases collected in 26 Am. & Eng. Encyc. of Law, (2d ed.) 62–67.

The defendant was an aged, inexperienced and ignorant woman. The mental ability of the plaintiff's agent was superior to hers; he persuaded her to refrain from consulting the adviser upon whom she was disposed to rely, and wrought upon her racial prejudices to persuade her to make the agreement at once upon the terms which he offered. After having thus kept her from obtaining the independent advice which she desired, he did not disclose to her the circumstances which led him to believe that a higher price could be obtained for the property. He was not of course under any fiduciary obligations to her; but this conduct on his part does not entitle him to favorable consideration in a court of equity. He took an inequitable advantage of the defendant.

The plaintiff further contends that his bill, instead of being dismissed, should have been retained for the purpose of giving him relief in damages. Undoubtedly this might have been done. It was done in *Rosenberg* v. *Heffernan,* 197 Mass. 151. Presumably it would have been done here, if the plaintiff had so requested. But the court was not bound to adopt this course; it might leave the plaintiff wholly to his remedy at law, as was done in *Curran* v. *Holyoke Water Power Co.* 116 Mass. 90. In

*Milkman* v. *Ordway*, 106 Mass. 232, relied on by the plaintiff, as in *Tobin* v. *Larkin*, 183 Mass. 389, *Lexington Print Works* v. *Canton*, 171 Mass. 414, and similar cases, the plaintiff had lost his right to purely equitable relief without fault on his part. The rule of those cases is not applicable here. The plaintiff has not asked for leave to change his bill by amendment into an action at law for damages, as in *Merrill* v. *Beckwith*, 168 Mass. 72.

*Decree affirmed.*