No. 11,737.

PESTAL *v.* O'DONNELL.

Decided March 28, 1927.

Action for specific performance. Judgment for plaintiff.

*Affirmed.*

*On Application for Supersedeas.*

1.  VENDOR AND PURCHASER—*Abstract of Title.* Under a contract for exchange of lands where one of the parties was to furnish abstract of title from the date of a deed of trust only, an abstract showing title from the government down, could not be required.

2.  *Deed—Tender.* Where, under the terms of a contract for exchange of properties, deeds were placed in escrow, objection that no deed had been tendered prior to trial because the deed placed in escrow contained an erroneous description, held untenable.

3. SPECIFIC PERFORMANCE—*Inadequate Consideration.* Inadequacy of consideration alone is not sufficient to justify a refusal of specific performance.

4. FRAUD—*Contract—Inadequate Consideration.* Where the consideration for a contract is grossly inadequate, it may amount to evidence of fraud.

5.      *Misrepresentation—Contract.* In an action for specific performance, evidence reviewed, and contention of defendant that he was induced to enter into a contract for the exchange of lands by the fraudulent representations of plaintiff, overruled.

6. VENDOR AND PURCHASER—*Sale—Inspection.* A purchaser of real estate cannot be charged with negligence for failure to inspect the premises where the circumstances are such as to make inspection impossible or difficult. But the rule is otherwise where the party claiming to be defrauded can by proper diligence ascertain the truth or falsity of the representations.

7. SPECIFIC PERFORMANCE—*Court Discretion.* It is within the sound discretion of the trial court to grant or refuse specific performance.

8. APPEAL AND ERROR—*Judgment—Presumption.* On review, all questions of fact must be resolved in favor of the judgment.

*Error to the District Court of Prowers County, Hon. A. F. Hollenbeck, Judge.*

Messrs. TODD & UNDERWOOD, for plaintiff in error.

Messrs. GORDON & GORDON, for defendant in error.

*En Banc.*

MR. JUSTICE SHEAFOR delivered the opinion of the court.

ACTION for specific performance brought by O'Donnell against Pestal. Judgment for plaintiff O'Donnell, and defendant Pestal brings the case here and applies for supersedeas. The plaintiff in error will be hereinafter referred to as the defendant, and the defendant in error as the plaintiff.

On August 12, 1925, plaintiff was the owner of a half section of land located about thirteen miles from Lamar, with water rights consisting of 144 shares in the Ft. Lyon Canal Company, and defendant was the owner of residence property in the city of Lamar. On that date the parties met for the first time, and entered into a written contract by which the plaintiff agreed to exchange his south quarter section of land, being the northwest quarter of section 29, township 22, south of range 48, west, together with .72 of a cubic foot of water per second of time, derived from the canal of the Ft. Lyon Canal Company, and represented by 72 shares of the capital stock of that company, for the defendant's residence in Lamar, described as lot 5, in block 40.

The plaintiff, by the terms of the contract, agreed to convey his land by good and sufficient warranty deed, free and clear of all liens and encumbrances, except an encumbrance of $6,500 to the Western Securities & Investment Company, with interest thereon after August 4, 1925, and taxes for the year 1925, and special drainage assessments falling due after the year 1925. The possession of the lands to be conveyed to defendant was to be delivered at the expiration of a lease then existing thereon, and subject thereto. The contract containing this further provision, "It is further agreed that deeds shall be made by each of the parties hereto in conformity with this contract, and deposited in escrow, to be delivered upon the performance hereof by the parties hereto. Party of the first part (Pestal) agrees to furnish to said second party (O'Donnell) an abstract of title to the property to be conveyed by him, certified to date, and party of the second part agrees to furnish the party of the first part a supplemental abstract of title from the date of the encumbrance to the Western Securities & Investment Company, each of said abstracts to show a good and merchantable title, subject to the taxes, encumbrances and assessments as herein provided."

The defendant's contentions are:

1. That the plaintiff failed to perform his contract in that he never tendered to defendant an abstract of title showing a good and merchantable title in plaintiff to the land and water rights described in the contract. Also that no deed was tendered by the plaintiff prior to the trial.

2. That the plaintiff's property, which by the contract he agreed to convey to defendant, was grossly inadequate and out of proportion to the value of defendant's property, and was of no value whatever.

3. That defendant was induced to enter into the contract by certain false and fraudulent statements and representations made by plaintiff to defendant immediately prior to the execution of the contract, consisting of the following: That the land was good, productive land, and ought to return a rental of $1,500 per year to the owner; that the water rights used and applied on the land, derived from the 72 shares of the capital stock of the Ft. Lyon Canal Company, were reasonably sufficient for the proper irrigation of all of the land to be conveyed, and that the drainage tax or assessments against the land on account of the bonded indebtedness of the McClave drainage district in which the land was situated amounted to only $200 per year, payable for twenty years, making a total payment during said term of only about $2,400.

The finding of the court was general. The defendant claims that the evidence was not sufficient to support the finding of the court, and that the finding and decree were an abuse of discretion. Defendant calls our attention to *Davis v. Pursel,* 55 Colo. 287, 134 Pac. 107, and *Hawkins v. Elston,* 58 Colo. 400, 146 Pac. 254. In the Pursel case this court held that an appellate tribunal may examine the evidence in a case of this character to ascertain if the trial court had the right conception of the law, if its conclusions are supported by the evidence, or are fair deductions therefrom; that if upon the whole case it is rea-

sonably certain that the decree is palpably unwarranted, though it may be slightly supported by the evidence, nevertheless it should be set aside, but "if the decree is supported by the evidence, under a proper conception of the law, it should not be disturbed, though the reviewing tribunal might have, if passing upon the matter in the first instance, reached a different conclusion." We further held in that case that it is a question for the trial court as to the convincing effect of the evidence; that if there is a fair quantum of proper evidence to support its conclusions we should presume that it was governed by the proper rules of law, unless the contrary appears. It was further said in that case, "It is that court, not this, which must determine the credibility of the witnesses, pass upon the weight of their evidence, and find the facts." The doctrine there announced is affirmed in *Hawkins v. Elston, supra.*

We shall now consider briefly the evidence. The defendant testified that plaintiff came to his office and said he had some land he would like to trade for the defendant's residence property, and that he went out in the afternoon to see the land; that the land was about thirteen miles from Lamar on the Santa Fe Trail; that they drove up to the house, and then went over into the corn field, which was a short distance from the house, and came back; looked around from there and then drove up the trail as far as the land reached; that there was a field on the west, that hadn't any crop at all. It was some broken land; that there was a field of corn on the east end of the land; that the land was crossed by the drainage ditch of the McClave Drainage District; that plaintiff told him that the assessments were payable annually; that they totaled about $2,400; that the annual payments were about $200; that plaintiff told him that he, plaintiff, had 144 shares in the Ft. Lyon Canal Company, and he would divide that; that his statements led defendant to believe that there was sufficient water for irrigation; that the conversation he had with plaintiff led defendant to believe

that there was plenty of water; that he didn't go over the west end or south part of the west end, where he said there was some seepage water from other land coming on there; "He told me about the productivity of the land; he said that it was all good land"; that the land which had been seeped, now since the drainage ditch was put in, was in fine shape, and that it would make the best of sugar beet land; sugar beets could be planted at once and grown good crops upon it; that the productivity was such that a fellow could expect at least $1,500 or more a year rental; that the productivity was such that he believed that had he the health he had in previous years he could go up on the place and in three years' time pay out all indebtedness against the place.

Defendant also testified that he was a practicing physician; had been living and practicing medicine in Lamar for about seven and one-half years; testified that he had no personal experience in farming under irrigation; that what little experience he had was handling a piece of land north of town under the Amity Ditch; that he had no experience in handling or managing land under the Ft. Lyon Canal; that he believed plaintiff's statement that the land ought to return a rental of $1,500 a year. Then the witness further testified, "I asked him—in the first place, I asked him how much returns he had from this land in the last few years, I asked him more than once. He evaded the question; didn't give me any specific answer; finally telling me that this land should return a rental of $1,500 or more a year, this one quarter that he was showing me. He said—of course, he gave an excuse regarding the land in previous years—because it had been seeped, but it was now cultivatable. But—and he gave the excuse that the land, that the corn crop wasn't looking as well as it should, telling me the renters—there had been a scarcity of rain and irrigation water in the spring —but he said the renters were new and inexperienced in irrigation, and they were simply afraid to put that in,

but if they had planted it they would have had a good crop there. Led me to believe it was sufficient water. It was under that misapprehension that I signed that contract." The witness testified that he relied altogether on the statements that plaintiff had made as to the character of the lands, and believed them; that otherwise he would not have signed the contract. The witness further testified that Parrish told him that the land was good; that Mr. O'Donnell used to do well on it. He also testified that the defendant left Lamar on the 18th of August and removed to Texas, about 700 miles distant, and did not return to Lamar until the time of the trial; that when he left Lamar he left the handling of this deal with his attorneys, Todd & Underwood; that he never went out to this land after the 12th day of August; that he never made any investigation of the land except through his lawyers; that he relied altogether upon the investigation made by his law firm; that he was in correspondence with his lawyers from the time he arrived in Texas; that he never examined the assessment records as to the McClave Drainage District. On cross-examination the defendant stated that after he had been out to see the land he went home; that his wife told him not to sign anything until morning, and not to do anything until morning; that his wife had an interest in the house, and she wanted him to conserve her interest, but that he came back and signed the contract under a misapprehension; that he employed his lawyers the next morning after the contract was signed, and told them to look after the matter; that he was relying upon them to make the investigation.

We have examined the record with care and find that there is much evidence tending to establish that plaintiff's land, which he contracted to convey to defendant, was of no value or very little value above the encumbrances; that it was a thin, gravelly and unproductive soil; that its rental value would not exceed $500 per year, and that it had no value other than the water right. On the other hand, there was considerable evidence that the

productivity of the soil was about the average of the Arkansas Valley; that there was no gravel on the place, and no seepage. There was evidence tending to show that it would cost about $650, exclusive of the right of way, to install the tile and system necessary to get seepage water on the place which would be ample to irrigate it; that this land would produce better than it had been producing if properly farmed and crops properly planted; that the cash market value of the land, with the 72 shares of Ft. Lyon water on it, without seepage rights, would be about ten or twelve thousand dollars; that with the seepage water, about $100 per acre; that a good portion of the land was plowed and in cultivation; that there were fences and a house on the land.

There was also evidence tending to show that defendant inspected the premises to his satisfaction, and that he was very well pleased.

A letter sent to the Lamar National Bank by defendant on September 24, 1925, recognized the binding force and effect of the contract of exchange.

A series of letters passing between counsel for the respective parties from September 15 to October 21 all proceeded upon the theory and assumption that the contract of exchange was valid and binding. On October 14, defendant's counsel sent a letter to counsel for plaintiff in which they demanded that certain things be done, and certain requirements be complied with, in order to meet the terms of the exchange contract, among other things, that a supplemental abstract be furnished in accordance with the agreement.

The evidence shows that at the time this exchange contract was entered into the land owned by the plaintiff, including the quarter which he contracted to convey to defendant, was encumbered by a trust deed to the Western Securities & Investment Company for $13,000; that in order to comply with his contract it was necessary for plaintiff to procure a partial release of the loan so as to

reduce the amount of encumbrance on the land, to be conveyed to defendant, to $6,500. In order to do this the plaintiff procured a new loan on the quarter section retained by him to cover the balance of the indebtedness. It was necessary for him to go to Denver to make the arrangements. He was required also to satisfy two judgments, procure the release of the same, and to cancel certain oil leases on the land. He was also required to pay the delinquent taxes, and certain delinquencies to the Western Securities & Investment Company, all of these things amounting in the aggregate to $4,200. To obtain the partial release from the Western Securities & Investment Company, he was required to, and did, pay about $3,500, which, with other money, he had to borrow from the First National Bank of Lamar.

1. Defendant's first contention that plaintiff failed to tender an abstract showing a good and merchantable title cannot be sustained. Defendant was willing to accept a supplemental abstract showing a good title from the date of the deed of trust to the Western Securities & Investment Company. Every requirement made by defendant concerning any defect in that abstract seems to have been complied with. We think plaintiff, in view of defendant's contract, could not be required to furnish an abstract showing title from the Government down. However, he did place the original abstract in the bank for examination by defendant's counsel, and they did examine it. They made certain objections to it which we think need not be discussed.

2. Defendant's next objection is that no deed was tendered by plaintiff prior to the trial. It appears that a mistake occurred in the deed placed in escrow, in that the land was described as being in range 44 while in fact it was in range 48. At the trial, after plaintiff rested, the defendant moved for nonsuit, and the mistake was then discovered. The court denied the motion, and permitted plaintiff to execute and tender a new deed which corrected

the mistake. There was no error in the court's ruling. It is true that defendant's counsel informed plaintiff's counsel a few months before the trial that plaintiff had not as yet tendered a deed to the premises in question, but it was not suggested that there was any mistake in the deed, and it was not discovered by plaintiff until the motion for nonsuit was presented.

3. As to defendant's claim concerning the inadequacy of the consideration, we have examined the evidence and conclude that there was sufficient to justify the finding of the court that there was a sufficient consideration to sustain the contract. Inadequacy alone is not sufficient to justify the court in refusing specific performance. Where the consideration is grossly inadequate it may amount to evidence of fraud. 6 R. C. L. p. 678, 679; 25 R. C. L. p. 208.

4. The remaining contention of defendant is that he was induced to enter into the contract by reason of certain false and fraudulent statements, the one principally relied upon being that the land was good productive land, and ought to return a rental of $1,500 per year to the owner. The evidence upon this proposition is conflicting, and there is sufficient to sustain the finding of the court. It does not appear from the evidence that the land would return a rental of $1,500 per year, or any return in excess of $500 per year, but whether that be true or not, we cannot say that specific performance should be refused because of the alleged misrepresentation or false statements of the plaintiff. As we have pointed out, defendant had been a resident of Lamar for several years. He had had some experience with irrigated lands. Before signing the contract he went out and inspected this land. He was then living about 13 miles from it. After the inspection he went home and talked with his wife about it. She told him not to sign any papers, and not do anything until the next morning. He went back, however, and entered into the contract with the plaintiff. It would seem

that he was perfectly satisfied with the contract at that time, and was, up to a much later period after he removed to Texas. On the morning following the execution of the contract he employed the firm of Todd & Underwood to look after this particular business for him, which they proceeded to do. On the day of the execution of the contract, or soon thereafter, defendant saw the witness Wilson and told him of the trade he had made. Wilson was on friendly terms with the defendant, and it appears that Wilson was possessed of very definite ideas, expressed by him at the trial, as to the utter worthlessness of the land in question. Furthermore, the testimony of defendant Pestal shows that when he asked plaintiff regarding the rental value of the land that plaintiff's answers were evasive; that he asked him two or three times, and that he could not get a definite answer out of him. This was sufficient of itself to have put defendant upon inquiry. No suggestion appears to have been made by defendant that any false statements or misrepresentations had been made by plaintiff until the letter from Todd to Gordon under date of October 21. Up to that time they had not only proceeded upon the theory that the contract had been entered into fairly, and freely, but had made certain requirements of the plaintiff concerning the title.

The cases which have been cited on the proposition that defendant had a right to rely upon the misrepresentations made to him, and that he could not be charged with negligence, or required to make an examination for himself, have no application to the situation here. In the cases cited by defendant the situation was entirely different. It is true that a purchaser of real estate cannot be charged with negligence, and is not required to make a personal examination, where the property which he has purchased is remote from the place of the contract or the place of his residence, and where he would be required, at considerable expense, to make the examination,

or where by reason of concealment or other circumstances, it would be impossible or difficult to make the inspection. But the rule is otherwise where the party claiming to be defrauded can by proper diligence ascertain the truth or falsity of the representations. *Sellar v. Clelland,* 2 Colo. 532, 544.

It is within the sound discretion of the trial court to grant or refuse specific performance, and it must be remembered that on review all questions of fact must be resolved in favor of the judgment. *Lewis v. Winslow,* 77 Colo. 95, 100, 234 Pac. 1070.

In the instant case, in view of the facts disclosed by the record, we think the court did not abuse its discretion, and that its judgment should be affirmed.

Supersedeas denied and judgment affirmed.