## NEARY v. MARKHAM et al.
### No. 3204.

Circuit Court of Appeals, Tenth Circuit.

May 15, 1946.

Rehearing Denied June 18, 1946.

Charles A. Moon, of Muskogee, Okl. (Joseph C. Stone, of Muskogee, Okl., on the brief), for appellant.

Marvin Shilling, Asst. U. S. Atty., and Kelly Brown, both of Muskogee, Okl. (Cleon A. Summers, U. S. Atty., of Muskogee, Okl., on the brief), for appellees.

Before PHILLIPS, BRATTON and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

This action was instituted by the Alien Property Custodian of the United States in the United States District Court for the Eastern District of Oklahoma against Harry G. Davis, executor of the estate of Henry Drost, deceased; Wilhelmia Langenberg, a resident and citizen of Germany, Evalyn M. Neary, and Jack Thornbrough, seeking a decree adjudging that he was entitled to the legacy of Wilhelmia Langenberg, and that Evalyn Neary had no right or interest therein. Davis answered, admitting the material allegations of the complaint, and asked similar relief against Evalyn Neary. Evalyn Neary filed an answer claiming the entire estate, less some small bequests, under a written contract signed by Drost. She prosecutes this appeal from a judgment adverse to her claims.

Henry Drost, a naturalized citizen of German birth, worked in the railroad shops at Muskogee, Oklahoma. During the period of his employment and after he retired, he engaged in making small loans to his fellow employees and acquaintances, and in this way, by frugality and thrift, accumulated an estate which, at the time of his death, was worth approximately $35,000. The defendant Harry G. Davis was a personal friend and the attorney for Drost. In 1935 he informed Drost that he could no longer continue to look after his small business affairs. He agreed to continue to represent him in his more important matters, but advised him to get some one else to represent him in his small loans. In 1936 Drost arranged with T. E. Neary, an attorney at Muskogee, to represent him when necessary with his small loans, and also arranged with Evalyn M. Neary, who was doing clerical work for her husband, to do such clerical work as was necessary in making small loans, making collections, issuing receipts, and other related services. Thereafter he had Neary represent him in several small matters, but continued to place his larger and more important matters with Davis. This arrangement con-

tinued until March 11, 1939. During this time Drost paid both Mr. and Mrs. Neary for such services as they performed.

On March 11, 1939, Neary prepared a written contract for his client, Drost, with his own wife, which is the basis of her claim in this action. The contract was signed by both Evalyn Neary and Henry Drost. In it Mrs. Neary agreed to remain in Muskogee as long as Drost lived, and "continue in his employment", and further agreed to have her husband, who as Drost's attorney had prepared the contract, to remain and continue his services, without compensation to either of them, in return for which Drost agreed to devise, bequeath and leave by will all his property, except certain small bequests, to Mrs. Neary.

Thereafter, on January 4, 1940, Drost executed a will in which he left all of his property, except bequests of approximately $500, to Mrs. Neary. But thereafter, on March 21, 1942, he executed a codicil to a prior will, of May 21, 1934, by which he revoked the will of January 4, 1940, and reaffirmed the will to which the codicil was attached. In this will he made some small bequests and left the remainder of his estate to his niece, Wilhelmia Langenberg, in Germany, and to Harry G. Davis, his regular attorney. Davis was made executor of the estate.

Mrs. Neary alleged in her answer that by oral contract entered into in 1936 there was contemplated, and thereafter in fact did exist, a filial relationship between Drost and her and her family. She further alleged that she and her husband refrained from going to Portland, Oregon, to establish themselves in business there by reason of her agreement with Drost, and that a business opportunity in Oregon was declined and that she had suffered irreparable loss, for which no remedy existed other than enforcement of the agreement. The court found that no contract providing for the filial relationship between Drost and Mrs. Neary existed. The court further found that if the Nearys ever contemplated moving to Oregon, it was in the year 1936, long prior to the execution of the written agreement, and the evidence amply supports this finding. The contention that a filial relationship existed between Mrs. Neary and Drost was apparently abandoned, because it was not adverted to in the bill of particulars, and there is a complete lack of evidence to establish any such relationship.

The trial court held that the contract was an oral contract under the Oklahoma decisions, because oral testimony was required to establish the nature of the services to be performed by Mrs. Neary, and that since they were susceptible of exact measurement in money's worth, specific performance should be denied. The court further held that the right to recover the value of the services was barred by Mrs. Neary's failure to file the claim within a year as required by Oklahoma law.

It is not necessary to determine whether the court correctly construed the contract to be an oral contract under the Oklahoma decisions, because, in any event, the decision of the trial court was correct. For the purpose of this opinion we will therefore assume that the writing was sufficient to constitute a written contract. Specific performance is an equitable remedy and the right thereto is not absolute like the right to recover a legal judgment.[1] Whether specific performance will be granted rests in the exercise of a sound judicial discretion by a court of equity. As stated by the authorities, specific performance will be granted when it is apparent from a view of all the circumstances of the particular case that it will subserve the ends of justice. As stated by Pomeroy, supra, § 35(a) : "It is not sufficient to call forth the equitable interposition of the court that the legal obligation under the contract to do the specific thing desired may be perfect. It must, also, appear that the specific enforcement will work no hardship or injustice; for if that result should follow, the court will leave the parties to their remedies at law."

Whether a court will grant or withhold equitable relief must be determined from the peculiar circumstances of each case considered in the light of these general equitable principles. In Mississippi and Mo. R. Co. v. Cromwell, 91 U.S. 643, 645, 23

---

[1] Pomeroy, Specific Performance, 3rd Ed., 1926, § 35.

L.Ed. 367, the court said: "He comes into court with a very bad grace when he asks to use its extraordinary powers to put him in possession of thirty thousand dollars' worth of stock for which he paid only fifty dollars. The court is not bound to shut its eyes to the evident character of the transaction. It will never lend its aid to carry out an unconscionable bargain, but will leave the party to his remedy at law." To the same effect, see Banaghan v. Malaney, 200 Mass. 46, 85 N.E. 839, 19 L.R.A.,N.S., 871, 128 Am.St.Rep. 378, and Marks v. Gates, 9 Cir., 154 F. 481, 14 L.R.A.,N.S., 317, 12 Ann.Cas. 120.

■■ Contracts between attorneys and clients, while not absolutely void, are carefully scrutinized. While they are not void as a matter of law, they are presumptively fraudulent,[2] and will not be upheld at the instance of the attorney unless a searching scrutiny shows them to be fair, just and equitable.

■ As stated by the Supreme Court in the Cromwell case, supra, we are not bound to close our eyes to the realities surrounding the execution of the contract in question. While Neary did not sign the contract, in effect he was a party to it. To make the contract effective he had to agree to remain in Muskogee during the remainder of Drost's life and to perform such services as were required of him, without compensation. Apparently he did not want to draw a contract to this effect between himself and Drost, but he did the equivalent thereof when he drew a contract for his client, Drost, with his own wife, or, perhaps stating it more accurately, drew a contract for his wife with his client, Drost, in which he had her agree to get him to agree to remain in Muskogee during the few remaining years of Drost's life and further get him to agree to perform small legal services if Drost would agree to leave her, his wife, $35,000 worth of property. It is not too difficult to conclude that Mrs. Neary did not have much trouble to persuade her husband to do this, when we consider that at the time Neary and his wife were in their middle fifties and Drost was about seventy-five years old, and when we further consider that during the years in question Neary's income from his law practice did not exceed $1,000 per year. So, also, Mrs. Neary's services were of small value. She was not required to do much. It does not appear that she was an expert secretary or stenographer. She merely assisted her husband in his law work, and in addition to this work and the work she did for Drost, carried on other small activities in which she was interested.

Mr. and Mrs. Neary never seriously contemplated leaving Muskogee. The court's finding that the time they discussed going to Portland was prior to the execution of the contract and at the time of its execution they did not contemplate leaving Muskogee is supported by the record. There is a complete absence of proof in the record of any filial or intimate relationship between the Nearys and Drost, such as would give their services such a value as would defy measurement in money's worth. In fact, all the evidence is contrary to the existence of such a relationship.

Paraphrasing the language of the Supreme Court in the Cromwell case, supra, Mrs. Neary comes into a court of equity under the circumstances of this case with very bad grace when she asks a court of equity to enforce a contract which her husband drew for her with his client whereby she was to receive $35,000 worth of property in return for services of inordinately small value to be performed by her and her husband, in comparison to the value of the estate, and for a time which at best could be, and actually was, for a very few years. The trial court exercised a sound discretion in refusing to specifically enforce the contract, and its judgment in that respect should be affirmed.

■ Mr. and Mrs. Neary both performed some services which were of value to Drost. The court found that adequate compensation for all such services performed by them would not exceed $900, but that recovery therefor was barred because no claim therefor had been filed within one year, as required by Oklahoma law. Neary was not a party to this litigation and the value of his services therefore is not an

---

[2] See Haunstein v. McCalister, 172 Okl. 613, 46 P.2d 552.

issue in the case. But Mrs. Neary is before a court of equity asking equitable relief, and while she is not entitled to the relief she seeks, it would be inequitable to deny her such relief as she is entitled to, unless the court is powerless to give it to her. We think that Mrs. Neary should have the fair and reasonable value of the services which she performed under this contract, and are of the opinion that the court had ample powers to give this to her.

A court of equity is not barred from acting by the statute of limitations. It may proceed notwithstanding that an action at law would be barred by the statute, or it may refuse to proceed even though the statute is no bar to an action at law. This principle is universally accepted and we deem it unnecessary to encumber the reports with a list of citations of authorities. Merely because Mrs. Neary may not in a court of equity impress a trust upon the property in question for the full amount of her claim under the contract does not mean that a court should refuse to give her the fair value of the services which she admittedly performed. The court could have refused to enforce her claim, upon condition, however, that the fair value of her services be paid. No doubt the court could have made the value of such services a lien upon the assets of the estate. The trial court did not separately find or fix the value of Mrs. Neary's services. This requires that the case be remanded.

The judgment of the trial court denying Evalyn Neary recovery of the reasonable value of the services performed by her under the contract is reversed. The judgment of the trial court assessing the costs against Evalyn Neary is vacated. In all other respects, the judgment of the trial court is affirmed.

As so affirmed, the cause is remanded to enable the trial court to determine and fix the value of the services performed by Evalyn Neary and enter an appropriate judgment therefor, and for the further purpose of considering further the assessment of costs under the present posture of the case and entering a new judgment therefor, in light of these further considerations.