### PHILLIPS PETROLEUM CO. v. OLDLAND et al.

#### No. 4149.

United States Court of Appeals
Tenth Circuit.

March 10, 1951.

Rehearing Denied April 5, 1951.

Bratton, Circuit Judge, dissented in part.

George L. Sneed, Bartlesville, Okl. (Don Emery, Oklahoma City, Okl., R. L. Foster and Harry D. Turner, Bartlesville, Okl., and Gorsuch & Kirgis, Denver, Colo., on the brief), for appellant.

Frank Delaney, Glenwood Springs, Colo. (C. J. Moynihan, Montrose, Colo., and L. H. Larwill, Denver, Colo., on brief), for appellees.

Before BRATTON, MURRAH and PICKETT, Circuit Judges.

MURRAH, Circuit Judge.

This is an appeal from a judgment of the District Court of Colorado on our mandate in Oldland v. Gray, 10 Cir., 179 F.2d 408.

In reversing the former judgment, we held that the 1926 assignment of the original prospecting permit created a trust relationship between the Oldlands as assignors and McLaughlin as assignee; that such relationship was not extinguished by subsequent mutations, and was binding upon all the parties in the chain of title; and that "in equity and good conscience the appellants are entitled to an overriding

royalty of 4 per cent. of the oil and 7½ per cent. of the gas produced, saved and sold from the leasehold estate, free and clear of cost, subject only to the government royalty." On remand, the trial court construed this critical language of our opinion as giving the Oldlands and their successors in interest 4 per cent. of all the oil and 7½ per cent. of all the gas produced, saved and sold from the lease, and awarded interest on the proceeds of such production from the date sold.

■ On appeal, Phillips Petroleum Company, as the assignee and producer of the lease, contends that the language should be construed to give the appellants 4 per cent. and 7½ per cent. of the oil and gas respectively, produced and sold from the leasehold estate, after the deduction of the statutory government royalty. Such was our deliberate intention.

In so decreeing, we used the phrase "overriding royalty" to designate an interest carved out of the lessee's share of the oil and gas, sometimes called a "working interest". This concept of the phrase comports with the parlance of the oil industry as adopted by the adjudicated cases. See Wright v. Brush, 10 Cir., 115 F.2d 265; Keegan v. Humble Oil & Refining Co., 5 Cir., 155 F.2d 971; Robinson v. Jones, 119 Kan. 609, 240 P. 957; Thornburgh v. Cole, 201 Okl. 609, 207 P.2d 1096; Knight v. Chicago Corp., Tex.Civ.App., 183 S.W. 2d 666. The use of the phrase "leasehold estate" was intended to designate the lessee's interest or the working interest in the land. Robinson v. Jones, supra, 119 Kan. 609, 240 P. at page 959; Vol. 24 Words and Phrases, p. 490. The use of the words "subject only to government royalty" was in recognition of the lessee's paramount obligation to pay the statutory government royalty, and to make it prior and superior to any other overriding obligation, including that reserved by Levison and Gray in their assignment to Phillips.

In retrospect, however, we perceive how the learned trial court was led to construe our phraseology as it did, indeed, how all of the parties were at one time so misled. The use of the words "in addition to the royalty due the government" in the original assignment to McLaughlin undoubtedly obligated him to pay the Oldlands the stipulated percentage of the value of all the oil produced and saved from the permit area. And, we have said that the rights of the parties under this agreement were "preserved in all their vitality in the leases on which oil was ultimately obtained by Phillips".

Without explanation, this view would logically lead to the conclusion reached by the trial court. But, we also pointed out that the original assignment gave the Oldland Group an incorporeal interest in the permit, obligating McLaughlin and his assigns to keep the leases alive and pay them a stipulated percentage of the value of the oil and gas when produced. The rights of the Oldlands were founded in the original permit and its assignment, but when they invoked equitable processes to enforce those rights, the original permit had been superseded by a statutory lease, under the terms of which the lessee or his assigns were obligated to pay "a royalty rate of not less than 12½ per centum in amount or value of the production and upon such other terms and conditions as the Secretary of the Interior shall by general rule prescribe * * *." Sec. 2 (a), Act Aug. 21, 1935, 49 Stat. 674, 679. See also United States v. Ohio Oil Co., 10 Cir., 163 F.2d 633, 639. And, different claimants were claiming different percentages of royalty under the permit assignment.

It was these considerations which prompted us, in the exercise of our equitable discretion, to decline literal enforcement of the permit assignment, but instead to award the claimants the substantial benefit of it by impressing a constructive trust on the proceeds of 4 per cent. of the oil and 7½ per cent. of the gas produced from all of the leases within the original permit area, after the deduction of the government royalty, regardless of the percentage—whether 12½ per cent. or more. In sum, we reasoned that while the Oldlands' rights were rooted in the contract, they were nourished and vitalized by the flexible processes of equitable jurisprudence, and ought therefore to find justification in the conscience of the chancellor.

See Neary v. Markham, 10 Cir., 155 F.2d 485; White v. Greenamyre, 77 Colo. 33, 234 P. 164; Pestal v. O'Donnell, 81 Colo. 202, 254 P. 764, 767; cases collected at Annot. 65 A.L.R. 7.

Phillips has also appealed from that part of the judgment awarding interest on the value of the accrued production from the date of its sale, contending that since the mandate did not provide for interest, the trial court was powerless to include it in its judgment thereon. It relies upon a long and unrelenting line of authorities, of which Briggs v. Pennsylvania Railroad Co., 334 U.S. 304, 68 S.Ct. 1039, 1040, 92 L.Ed. 1403, is the latest, to the effect that "an inferior court has no power or authority to deviate from the mandate issued by an appellate court", and where the mandate is silent with respect to interest in the judgment, the trial court cannot allow it.

In the Briggs case, the trial court set aside a verdict of a jury for the sum of $42,500.00, and dismissed the complaint for lack of jurisdiction. The court of appeals reversed and directed the entry of a judgment for the plaintiff on the verdict. The mandate was silent with respect to interest, but when, on remand, the trial court came to enter judgment thereon, it added interest to the amount of the verdict from the date of its return. The court of appeals modified the judgment to exclude the interest, and the Supreme Court affirmed, saying "The latter court's mandate made no provision for such interest and the trial court had no power to enter judgment for an amount different than directed", citing In re Washington & Georgetown Railroad Co., 140 U.S. 91, 11 S.Ct. 673, 35 L.Ed. 339.

These cases and those which follow them suggest no exceptions or qualifications to the rule, but we think that the rule announced and adhered to there must be considered in the light of what has been said elsewhere with respect to the scope and controlling effect of an appellate court's mandate.

Without repudiating or derogating from the rule of In re Washington & Georgetown Railroad Co., supra, the Supreme Court has consistently recognized the power of a district court to "consider and decide any matters left open by the mandate of this court". In re Sanford Fork & Tool Co., 160 U.S. 247, 16 S.Ct. 291, 293, 40 L.Ed. 414. Thus, in Sprague v. Ticonic Nat. Bank, 307 U.S. 161, 59 S.Ct. 777, 779, 83 L.Ed. 1184, a decree in equity of the trial court was affirmed by the Court of Appeals, 1 Cir., 99 F.2d 583, and the Supreme Court. Before final affirmance in the Supreme Court, the successful parties brought another action to recover their costs "as between solicitor and client". Deeming itself foreclosed by the mandate in the former case, the trial court dismissed the action and the Court of Appeals affirmed. The Supreme Court reversed, saying that "While a mandate is controlling as to matters within its compass, on the remand a lower court is free as to other issues"; that since the claim for "as between solicitor and client" costs was not directly or impliedly in issue in the original proceedings, or directly or impliedly covered by the original decree or mandates, neither constituted a bar to the consideration of the question on its merits in subsequent proceedings. See also Illinois Bell Telephone Co. v. Slattery, 7 Cir., 98 F.2d 930.

Here, no interest was claimed in the original suit, and since the trial court denied the relief on the merits, it had no occasion to consider the question, nor was the issue presented or considered on appeal. In our mandate for "proceeding in conformity with the views expressed" in the opinion, we neither directly nor impliedly foreclosed a consideration of that question on remand, and we therefore think that the question is open. Cf. Lineman v. Schmid, 32 Cal.2d 204, 195 P.2d 408, 4 A.L.R.2d 1380; Zeckendorf v. Steinfeld, 15 Ariz. 335, 138 P. 1044.

The question remains whether the allowance of interest was justified under the facts. This being a diversity case, the question is controlled by Colorado law, T. & M. Transp. Co. v. S. W. Shattuck Chemical Co., 10 Cir., 158 F.2d 909, and we have the word of the trial judge when he spoke for the Colorado Supreme Court, to the effect that Colorado courts may allow the "equivalent of interest in the way of

damages for the tortuous taking and detention of money or property." Bankers Trust Co. v. International Trust Co., 108 Colo. 15, 113 P.2d 656, 665. And, following Colorado law, we have sustained the power of a court of equity in the exercise of its sound discretion to allow interest upon equitable considerations, even though it could not be recovered by law. Gaskins v. Bonfils, 10 Cir., 79 F.2d 352. We have said rather dogmatically that "interest may not be allowed on an unliquidated claim." Grand River Dam Authority v. Jarvis, 10 Cir., 124 F.2d 914, 918. See also Saulsbury Oil Co. v. Phillips Petroleum Co., 10 Cir., 142 F.2d 27, 40. But, courts now generally allow interest on unliquidated claims "according to their concept of the demands of justice and practicality." Funkhouser v. J. B. Preston Co., 290 U.S. 163, 54 S.Ct. 134, 136, 78 L.Ed. 243. It is given or withheld in the discretion of the chancellor "in response to considerations of fairness." Board of Commissioners of Jackson County v. United States, 308 U.S. 343, 352, 60 S.Ct. 285, 289, 84 L.Ed. 313. And see Brown v. Home Development Co., 129 N.J.Eq. 172, 18 A.2d 742; Meyers v. Texas Co., 6 Cal.2d 610, 59 P.2d 132; John Agnew Co. v. Board of Education of City of Paterson, 83 N.J.Eq. 49, 89 A. 1046; McCormick on Damages, p. 206–233.

Section 156 Restatement of Law—Restitution, cited by the Colorado court in the Banker's Trust Co. case, supra, provides extensive guides for the application of this equitable concept. It states that: "a person who has a duty to pay the value of a benefit which he has received, is also under a duty to pay interest upon such value from the time he committed a breach of duty in failing to make restitution if, and only if: (a) the benefit consisted of a definite sum of money, or (b) the value of the benefit can be ascertained by mathematical calculation from the terms of an agreement between the parties or by established market prices, or (c) payment of interest is required to avoid injustice." Commenting on this statement, it is said that "Ordinarily if the sum due is sufficiently definite so that the transferee would have reason to know the amount he should pay, it would be unjust not to allow interest from the time when it should have been paid * * *." See also Restatement of the Law of Contracts, Sec. 337; Moore v. Harjo, 10 Cir., 144 F.2d 318, 324.

The identity of the claimants and their rightful interest under the permit had not been established when Phillips took the lease, and the claims differed in respect to the extent of the collective interest under it. The ultimate amount of Phillips' liability will not be known until this proceedings is finally concluded. But Phillips took the lease assignment with actual and constructive notice that stipulated percentages of the oil and gas had been reserved to the original permittees, and that its predecessors in title had acknowledged their obligation under the permit assignment. It took the lease and produced and sold the oil at its established market value with knowledge of these claims. It took the position, as it had a right to do, that these claimed interests had been extinguished by operation of law and laches, and that they were not indebted to the claimants in any sum.

But equity has decreed otherwise, and it is not powerless to compensate the successful claimants for the deprivation of the benefit they claimed at the time the oil was produced to the extent that such claims were allowed in equity. The mere fact that the validity of the claim was in dispute does not preclude the recovery of interest. T. & M. Transp. Co. v. S. W. Shattuck Chemical Co., supra. The value of the oil was not in dispute, it was only the amount thereof. That issue has been determined in accordance with equitable principles, and the allowance of interest for its wrongful retention must also be judged by the same equitable considerations. In the exercise of the wide discretion committed to it, see Chisholm v. House, 10 Cir., 183 F.2d 698, the trial court allowed interest on the market value of the oil attributable to the plaintiffs' interest from the date of its taking. We are unable to say that its determination is clearly erroneous.

The judgment is therefore reversed and remanded with directions to award the

784

appellees 4 per cent. of the oil and 7½ per cent. of the gas produced and sold from the leasehold estate, after the deduction of the statutory government royalty, with interest at 6 per cent. from date of sale and payment therefor.

BRATTON, Circuit Judge (dissenting in part).

On the former appeal, the judgment was reversed and the cause remanded with directions to enter judgment for plaintiffs for the overriding royalty oil; and it was implicit in the opinion and the mandate that plaintiffs were entitled to personal judgment in money for the value of the overriding royalty oil previously produced and sold. But nothing was said in the opinion or the mandate respecting interest on the judgment for the royalty oil which had been sold. It is the general rule that the trial court may consider and decide any matter left open by the mandate of the appellate court. But it is well settled that where a judgment which fails to provide for interest is affirmed with nothing being said about interest, or where a judgment is reversed and the cause remanded with directions to enter judgment for a specific amount with nothing being said about interest, it is the duty of the trial court to enter judgment strictly in accordance with the mandate and not to add the allowance of interest. In such instances, the trial court is without power to deviate from the mandate by including interest. In re Washington & Georgetown Railroad Co., 140 U.S. 91, 11 S.Ct. 673, 35 L.Ed. 339; Briggs v. Pennsylvania Railroad Co., 334 U.S. 304, 68 S.Ct. 1039, 92 L.Ed. 1403.

Plaintiffs could have applied to this court for a modification of the opinion or an enlargement of the mandate to provide for interest. But they failed to do that. Instead, they sought and obtained from the trial court a provision in the judgment entered on the mandate allowing interest. The trial court was without power to depart from the mandate in that manner. In re Washington & Georgetown Railroad Co., supra; Briggs v. Pennsylvania Railroad Co., supra.

United States Court of Appeals
Fifth Circuit.
March 28, 1951.

