KENNEBUNK, KENNEBUNKPORT AND WELLS WATER DISTRICT

*vs.*

INHABITANTS OF THE TOWN OF WELLS.

York.    Opinion July 18, 1929.

*Harold H. Bourne,* for plaintiff.
*Ray P. Hanscom,* for defendant.

SITTING: WILSON, C. J., DUNN, STURGIS, BARNES, PATTANGALL, FARRINGTON, JJ.

WILSON, C. J.   An action by the Kennebunk, Kennebunkport and Wells Water District to recover sums alleged to be due the District as hydrant rentals from the town of Wells. It comes to this court on report.

Prior to 1922, the inhabitants of the towns of Kennebunk, Kennebunkport, and Wells and a part of the town of York and the city of Biddeford were supplied with water for domestic and municipal purposes by the York County Water Company. On application to the Legislature of 1921 by citizens of these towns, an act was

passed, Chap. 159, Private and Special Laws, 1921, creating a Water District composed of the towns of Kennebunk, Kennebunkport and a part of the town of Wells to become effective when accepted as provided in the Act. The Act contained the usual provisions for taking over the property and franchises of the Water Company.

The Act having been duly accepted, but the trustees of the District and the Water Company being unable to agree as to the price to be paid, a petition was filed in the court by the trustees of the District with a view to acquiring the property by condemnation. Before these proceedings reached a hearing, however, the parties agreed to terms of purchase. The agreement was reached about April 1, 1922, the District on May 8, 1922, taking over the property, including by the terms of the Act the net proceeds of all receipts after January 1, 1922.

Prior to the formation of the District, the Water Company with the approval of the Public Utilities Commission had fixed rates to the consumers, including hydrant rentals for the three towns, and according to the established rates the town of Wells was required to pay annually a sum averaging approximately sixty-eight dollars per hydrant, and the town of Kennebunk approximately thirty dollars per hydrant per year. It does not appear in the report what the exact annual rental per hydrant for the town of Kennebunkport was, but the inference from the record is that it was considerably more than that paid by the town of Kennebunk, and that the average for the three towns was between forty-five and fifty dollars per hydrant per year.

During the period from January 1 to May 8, 1922, on which latter date the District actually took over the property, the Water Company, of course, collected or billed to the several towns the hydrant rentals at the old rates and following the taking over of the property, the trustees of the Water District continued to bill the hydrant rentals at the rates fixed by the Water Company until April 1, 1923, when a flat rate of thirty-five dollars per hydrant per year was fixed by the trustees for each town.

The total rental for hydrants in the town of Wells at the old rate of the Water Company to April 1, 1923, and at the new rates fixed by the Trustees of the Water District from April 1 until

December 31, 1923, totals $6,595.37, and the total amounts paid by the town of Wells up to January 1, 1924, was $4,717.53, leaving a balance due as the Water District claims of $1,877.84.

The town of Wells, however, contends that the old rates for hydrants became illegal from January 1, 1922, the date when the District was entitled to receive the rates, and according to the rates finally fixed by the Water District a much less amount is due. It bases this claim on a provision in the Act creating the District which provides that: "All individuals, firms and corporations, whether public, private or municipal, shall pay to the treasurer of said district the rates established by said board of trustees for the water used by them, and said rates shall be uniform within the district."

This contention, we think, can not be sustained. The act creating the district must be construed in the light of the general policy of the state as expressed in Chap. 55, R. S. Every such district is quasi-municipal in its nature, and this district is so termed in the act creating it.

Every quasi-municipal corporation serving the public as a "Water company" is a "public utility" and as such is subject to the control of the Public Utilities Commission. There is nothing in the act creating this district to indicate that the legislature intended to exempt it from the control of the Utilities Commission.

By the act of 1913, the legislature vested in the Public Utilities Commission exclusive control over the rates of all public utilities and provided the method by which all unjust and unreasonable or discriminatory rates should be remedied, subject only to appeal to this court on questions of law by bill of exceptions.

When the legislature declared that the rates established by the trustees of the district shall be uniform throughout, it required no more than is required under Secs. 16 and 33 of Chap. 55, R. S., viz.: that all rates shall be reasonable and just and without unjust discrimination. This provision in the act creating the district should not be construed to require every householder in the district to pay the same rate regardless of the amount of water used or that no one could use meters unless all did, or that rates for all kinds of service, domestic or municipal, regardless of the amount of water used or the expense of supplying it must be the same.

Absolute uniformity in public service rates like uniformity in taxation is the unattainable. It can only be approximated.

Uniformity as required by the Act creating the district, therefore, must be held to mean that the rates established by the trustees must be reasonable and just and without discrimination between takers of the same class having reference to the nature of the service and also the cost of supplying it. 40 Cyc., 802, 27 R. C. L., 1448-51. *Souther* v. *Gloucester*, 187 Mass., 552.

Whenever the regulatory body created by the state acting within the scope of its authority have approved certain rates as reasonable and just and not unjustly discriminatory and no grievance is claimed in due course by those affected, the courts will assume that the rates are uniform as between users of the same class. The establishing of classes of users is a matter of judgment, and is vested finally in the Utilities Commission, Sec. 31, Chap. 55, R. S., and a finding by the Commission on such questions will not be disturbed by this court unless clearly without any basis on which to rest, or results in confiscation or the taking of property without due process.

When the district in this instance took over the property of the Water Company, it found in force rates, including those for hydrant rentals, which had been approved after hearing by the Utilities Commission. We think it had a right to assume they were not unjustly discriminatory as between the takers of this municipal service. The adjustment of a schedule of rates is not a matter to be done offhand. Many elements enter into reasonable rates, and the classification of users.

The dividing of the total hydrant rentals in the three towns by the total number of hydrants as suggested by the counsel would, of course, have produced the same rates for each town, but it might not have produced reasonable and just rates. Rate making is not so simple a problem.

It is clear that, until the District and the Water Company arrived at an agreement to take over the property the Act contemplated that the rates established by the Water Company should remain in force; nor could new rates be put into effect until the trustees were in possession and control. The legislature must also have contemplated that some time would elapse after taking over

the property before the trustees of the District under the new conditions could fairly weigh the elements entering into changes in the schedule of rates which had been in force under the Water Company.

It can not be determined, however, from the report whether the trustees of the District immediately after taking over the property formally adopted the rates of the Water Company, and, if so, whether they filed them as the rates established by the district with the Public Utilities Commission. The rates of the Water Company, if adopted by the trustees, were no longer those of the Water Company, but became on adoption those established by the District, and according to the plain intent of Chap. 55, R. S., must be filed with the Utilities Commission in order that they may be of public record and be complained against by any person aggrieved thereby. Until this is done, the courts will not enforce the recovery of them in a suit at law. A utility has no right to furnish service to the public until it has complied with the provisions of Chap. 55. Failure to do so subjects it to a penalty.

None of the facts for the determination of these questions appear in the report. The report is lacking in so many respects for a determination of the rights of these parties, lest injustice be done, the report is discharged in order that the parties, if they so desire, may take out additional evidence.

*Report discharged.*