322 F.2d 516
 The INTERMOUNTAIN RURAL ELECTRIC ASSOCIATION, a corporation, Appellant,
v.
COLORADO CENTRAL POWER COMPANY, a corporation, by merger now known as Public Service Company of Colorado, Appellee.
 No. 7133.
 United States Court of Appeals Tenth Circuit.
 September 5, 1963.
 Rehearing Denied September 30, 1963.
 
 COPYRIGHT MATERIAL OMITTED Leonard M. Campbell, Denver, Colo. (Dwight D. Murphey, and Gorsuch, Kirgis, Campbell, Walker & Grover, Denver, Colo., with him on the brief), for appellant.
 Philip A. Rouse, Denver, Colo. (Charles D. Bromley, and Lee, Bryans, Kelly & Stansfield, Charles J. Kelly and Bryant O'Donnell, Denver, Colo., were with him on the brief), for appellee.
 Before PHILLIPS, PICKETT and SETH, Circuit Judges.
 SETH, Circuit Judge.
 
 
 1
 Suit was brought against appellant on a contract providing that appellant would buy its requirements for electric current to be resold to its present and future customers in certain areas of Colorado, and appellee agreed to furnish this electricity as a distributor or wholesaler. The initial contract was for a five-year term from 1945. This was extended and amended in 1950 for another five-year term and thereafter for yearly periods unless terminated on six months' notice by either party. The appellant bought from appellee all of its power needs for these areas until 1954. Thereafter it bought only a portion of these needs from the appellee and the balance from another source. Appellant paid for the power it purchased from appellee. Appellee however sought to recover, and did recover in the trial court, damages for the additional power appellee would have sold to appellant during this period had appellant purchased its entire requirements from appellee. The court tried the issue of liability and entered a decree in January 1961 holding appellant liable for the period 1954 to August 14, 1961, and then referred the case to a master for the determination of damages. Damages were awarded to appellee in the amount of $236,488.00 for the period 1954 through 1960. Damages were to be determined later for the interval January 1, 1961, to August 14, 1961, the termination date of the contract. The appellant has appealed from the final judgment of May 25, 1962.
 
 
 2
 Appellant urges as one of its principal points that the contract in question lacks "mutuality" and thus is unenforceable as to the portion not performed. In the contracts the appellee was referred to as the Company, and the appellant as the Customer. The 1950 agreement provides in part:
 
 
 3
 "The Company agrees to sell and deliver to the Customer and the Customer agrees to purchase and receive from the Company all the electric energy to be sold by the Customer, during the term of this agreement, to its present and future customers who may be located on or be connected to (a) its lines now being served with electric energy purchased from the Company and (b) its lines hereafter to be served with electric energy purchased from the Company and delivered at substation (D), Hosa Lodge Tap. Electric energy for resale to customers referred to above shall be delivered by the Company to the Customer through the following sources: * * *."
 
 
 4
 The contract thereafter lists the Cherry Creek Tap which serves present and future customers of the appellant in its Cherry Creek division, the Castle Rock Tap serving present and future customers in the Castle Rock division, and again refers to the Hosa Lodge Tap. Appellant was actively engaged in retailing electricity to its customers in these areas in 1950 if not at an earlier date. The contract also contemplates the service by appellant to its future customers or members in the several areas.
 
 
 5
 This is a "requirements contract" as the term is generally used in decisions and texts. It is generally held that there is a consideration to support such contracts when the seller expressly agrees to sell and the buyer expressly agrees to buy its requirements for use in its business. The requirement is made in some cases that the buyer's business be then in existence in order that the quantities or requirements can be anticipated with some degree of certainty. 14 A.L.R. 1300, 26 A.L.R.2d 1139. We do not hold that in all situations the buyer's business must be established but we do point out that it is obvious from the nature of appellant's business that there could be no large and rapid variations in the amount of electric energy purchased from the appellee to serve these customers. The business of appellant is dependent on the population and business growth in the geographical area served. These additions and perhaps reductions in customers necessarily could come about only at a relatively slow rate. Likewise wide price fluctuations would not be expected. Thus there is no need for concern here over the possibility that one party could speculate or take advantage of the other by greatly increasing its demand. It is also significant that the contract after 1955 was on a year-to-year basis and either party could terminate by giving six months' notice to the other.
 
 
 6
 The Colorado courts have considered "requirements contracts" in two principal cases, Cohen v. Clayton Coal Co., 86 Colo. 270, 281 P. 111, 74 A.L.R. 467, and Powerine Co. v. Crown Service Co., 113 Colo. 450, 158 P.2d 732. The Cohen case involved a claim for damages for failure to deliver under a letter offer in which the seller offered to furnish coal from its mine to the buyer who was engaged in the retail coal business. There was a conflict in the evidence as to whether the buyer had marked the letter "accepted" and returned it. The Colorado Supreme Court refused relief and discussed mutuality and whether or not the buyer had accepted the seller's offer. The court said:
 
 
 7
 "We construe a contract, such as the one under consideration, to be mutual when it contains on one hand a promise to sell, and on the other a promise to purchase, but unless it contains these elements there is want of mutuality. An examination of the `contract' in the instant case discloses the want or lack of a promise to purchase."
 
 
 8
 In Powerine Co. v. Crown Service Co., supra, the defendant agreed to purchase from the plaintiff the larger portion of its requirements of gasoline and plaintiff agreed to supply such requirements. The court quoted from the Cohen decision, distinguished it in some respects, found that the elements of mutuality of obligation were present, and held the Crown Service Company bound to purchase. Under these standards established by the Colorado Supreme Court, there was in the case at bar adequate consideration for the executory portion of the agreement. There was a mutuality of obligation arising from promises made by each party. The court was provided with sufficient standards to enable it to enforce the promises. The important implied limit or restriction, that the appellant would not buy from other suppliers, was there present as it is in the case at bar. As stated in 1 Corbin, Contracts, p. 513: "Without saying so, men intend to deal within the limits of what is practical and reasonable," citing Eagle Coal & Mining Co. v. Hazen, 187 Iowa 952, 174 N.W. 660. Similar contracts have been upheld in Imperial Refining Co. v. Kanotex Refining Co., 29 F.2d 193 (8th Cir.); City of Holton v. Kansas Power & Light Co., 135 Kan. 58, 9 P.2d 675; Industrial Natural Gas Co. v. Sunflower Natural Gasoline Co., 330 Ill.App. 343, 71 N.E.2d 199. Thus the contract in the case at bar was not unenforceable on the ground that it lacked mutuality of obligation. The findings of the trial court on this point were adequately supported by the record.
 
 
 9
 Appellant next urges that the contract is unenforceable since it was not filed with the Public Utilities Commission of Colorado as required by § 115-3-3 of the Colorado Revised Statutes of 1953. This section provides that public utilities shall file with the Commission, under regulations it may prescribe, their rates and charges. A Commission rule provides that schedules of rates for service, forms of contracts, and charges for service connections shall be filed. There is no specific rule requiring that particular contracts such as the one here under consideration must be filed. Neither the statutes nor the rules provide any penalty nor state the consequences of a failure to file. There would seem to be no direct public concern in this particular transaction, since the contract is for a wholesaling of energy to a retailer. The Commission has adequate authority to require a disclosure to it of contracts of this nature if it desires. It would only be concerned with such contracts in considering the over-all rates of either party should they be within its jurisdiction. There is nothing illegal or improper about the agreement itself, and it is within the powers of both parties. It does not tend to impair the obligations of appellee to serve the public nor of the appellant to serve its members. Georgia Power Co. v. Georgia Public Service Comm'n, 211 Ga. 223, 85 S.E.2d 14; Oklahoma Gas & Electric Co. v. Wilson & Co., 146 Okl. 272, 288 P. 316. As to a filing requirement appellant relies primarily upon Kennebunk, K. & W. Water Dist. v. Inhabitants of Wells, 128 Me. 256, 147 A. 188. The court there held that the rates be filed "in order that they may be of public record, and be complained against by any person aggrieved thereby." The court would not enforce recovery until such filing was made, and stated: "A utility has no right to furnish service to the public until it has complied with the provisions of chapter 55," but the provisions of the statute are not stated and the above quotation indicates a protest period. Also the service to the public aspect of the case serves to distinguish it from the case at bar. We do not consider the case particularly persuasive on our problem. There are no Colorado decisions on the construction of this statutory provision as to filing with the Public Utilities Commission. The trial court decided that the failure to file did not make the contract unenforceable and we find this to be well within the general authorities on the subject, and it is a reasonable application of the statute to the circumstances of the case.
 
 
 10
 Appellant further urges that the contract was terminated by breach or by written notice, and thereby seeks to limit the period during which damages accrue to the notice period. As indicated above, the agreement, after its initial term, could be ended by either party by giving six months' notice to the other. The record shows that the appellant after 1954 purchased electricity from other sources from time to time to serve the contract areas. These outside purchases were substantial in relation to its needs for electricity within the divisions in which the substituted source was used. The position taken by the appellant is that its partial breaches of contract by a reduction of purchases from the appellee at certain of its connections amounted to its repudiation of the contract, or that this action should have served to advise the appellee that there was a breach of such consequence that suit should have been instituted by appellee. We do not agree. Instead the choice as to whether to bring suit or not, and when, was with the appellee, and appellant cannot here argue that such a suit should have been brought at an earlier date or that the contract should have been terminated by the appellee. The record does not show any termination by conduct of either party. The appellee stood ready at all times to furnish electricity and did in fact so furnish some of appellant's requirements.
 
 
 11
 The case of Oil Workers Int'l Union, Local No. 463 v. Texoma Natural Gas Co., 146 F.2d 62 (5th Cir.), holds that the parties are bound by the methods of termination or rescission contained in the agreement. It is clear that the agreement provided for a total or complete termination by either party. A letter of termination was sent by appellant which sought to terminate the agreement as to certain connections only. This was an attempt to partially terminate the contract and was not effective for any purpose. In reply to this letter appellee stated that it considered the contract in full force and effect but did nothing more.
 
 
 12
 Professor Corbin in 4 Corbin, Contracts, § 954, p. 829, states:
 
 
 13
 "The unexcused failure of a contractor to render a promised performance when it is due is always a breach of contract for which an action for an appropriate remedy can be maintained. Such failure may be of such great importance as to constitute what has been called herein a `total' breach. This is true even though there may be a large part of his promised performance that is not yet due; and it is true also even though the failure to perform is not accompanied by any expression of repudiation of the contractual obligation. For a failure of performance constituting such a `total' breach, an action for remedies that are appropriate thereto is at once maintainable. Yet the injured party is not required to bring such an action. He has the option of treating the non-performance as a `partial' breach only and getting a judgment therefor without barring a later action for some subsequently occurring breach. It is reasonable for him to expect performance of the remainder of the contract as agreed and to ask a judicial remedy in case of disappointment."
 
 
 14
 See also Kimel v. Missouri State Life Ins. Co., 71 F.2d 921 (10th Cir.). There was no termination or repudiation of the contract by conduct nor by correspondence. The trial court's findings on this matter are correct and supported by the record.
 
 
 15
 The remaining points which are raised by appellant refer to details and methods adopted by the master and by the trial court in the computation of damages. The first of these points relates to what is called the "fuel clause" in the contract. This was a clause which provided that if the fuel costs of Public Service Company of Colorado, which was the source of appellee's electrical energy, should increase, then the rate charged by the appellee to the appellant would also increase. This adjustment clause is subject to some possible difference of interpretation. The appellant contends in effect that the adjustment should only be applied in the event that the increase in fuel costs was actually passed on by the Public Service Company of Colorado to the appellee. On the other hand the appellee contends that the adjustment should apply whether or not this additional cost was specifically passed on. The record shows that various agreements were entered into from time to time between the Public Service Company of Colorado and the appellee and revisions in rates were made. The rates charged between the parties in this action were also changed from time to time. The fuel cost adjustment clause was part of the method of determining the rates between the parties and there appears to be no reason why it should not have been used to compute damages. There is nothing in the record to show that appellant actually made any objection to the rates which were charged by the appellee for the five or six years following 1945 during which time the appellant purchased all of its requirements from the appellee, nor did it so object from 1955 to 1960 when appellant continued to purchase some of its power in the various areas from appellee. Since it did not object to the rates during these several periods, it cannot now object to a computation of damages using rates which were so applied by the parties. The master and the trial court correctly applied and interpreted this contract clause relative to fuel costs.
 
 
 16
 The appellant objected to the evidence of the fuel costs of the Public Service Company of Colorado which consisted of letters from the Public Service Company of Colorado to the appellee stating what the fuel costs were for each preceding month. Appellant objected to the admission of this evidence in general terms and in a limited manner. The specific objection was that the exhibits could not be used beyond a certain date. Since appellant made objection on the specific ground and this ground did not include hearsay which is now argued, it is limited and bound by the rule set forth in Frates v. Eastman, 57 F.2d 522 (10th Cir.), and Prudential Ins. Co. of America v. Faulkner, 68 F.2d 676, 94 A.L.R. 1160 (10th Cir.).
 
 
 17
 The trial court allowed interest on the damages and appellant objects. This matter of interest under Colorado law was considered by this court in North Drive-In Theatre Corp. v. Park-In Theatres, 248 F.2d 232 (10th Cir.), where as here the Colorado law is applicable. Phillips Petroleum Co. v. Oldland, 187 F.2d 780 (10th Cir.). In North Drive-In Theatre Corp. v. Park-In Theatres, supra, the court held that the Colorado statute involved had been interpreted by the Colorado courts and the Tenth Circuit to cover liquidated claims. The appellant in the case cited had asserted that the claim was not liquidated, but the court found that the damages could be readily computed and this was sufficient. The court likewise considered the matter in T. & M. Transp. Co. v. S. W. Shattuck Chemical Co., 158 F.2d 909 (10th Cir.), in J. F. White Eng'r Corp. v. United States, 311 F.2d 410 (10th Cir.), and in Phillips Petroleum Co. v. Oldland, supra. Thus a claim has been considered to be liquidated for the purpose of this statute if it can be readily computed. The record here shows that the damages suffered by appellee could be computed by using the contract rates, the quantities used from other sources, and appellee's cost of electricity. This computation is lengthy, but it can and was accomplished by one experienced in the trade. This computation made as to the executory portion of the contract would seem to be basically the same as the computations made of monthly bills, or would have been made of the monthly bills submitted to the appellant had it received the service, except here the determination of quantities was more difficult. The interest element was set out in the master's report. Appellant in its lengthy objections to the report and to the proposed order did not object to interest on the damages. The record does not show that any objection to interest was ever made by the appellant to the trial court. Motions on other matters were heard by the court and there was adequate opportunity to raise the point. The Colorado statute on interest has been broadly construed by the Colorado courts in Wells v. Crawford, 23 Colo.App. 103, 127 P. 914, Harvey v. Denver & R. G. R. Co., 56 Colo. 570, 139 P. 1098, and interest generally in Bankers Trust Co. v. International Trust Co., 108 Colo. 15, 113 P.2d 656. The damages here considered are of such a nature that under the Colorado statute and Colorado decisions, interest was properly allowed thereon. The action of the trial court in this respect was correct.
 
 
 18
 Appellant also urges that an error was made in the refusal to allocate overhead costs in the calculation of damages. We find no error in this connection. An award is made to place the appellee in the position he would have been had the contract been fully performed by appellant. Electrical Products Consolidated v. Sweet, 83 F.2d 6 (10th Cir.). The action was proper and we find no error.
 
 
 19
 Appellant urges that there was a variance between the pleadings and the proof in relation to amounts of electricity that would have been delivered in Elbert County. They assert that Elbert County is not specifically named in the complaint, and no amendment was made of the pleadings. The record shows that evidence was received over appellant's objections as to damages relating to Elbert County. The basis of the suit was the contract which has heretofore been referred to, and which was incorporated by reference in the pleadings. The trial court considered this matter of variance and found that there was no limitation of the scope of the contract by allegations contained in the complaint. The court found also there was no evidence on a limitation of the scope of the contract and consequently held the decree would cover an area as broad as the contract. There would seem to be no prejudice whatever that could have resulted to the appellant by reason of the inclusion of evidence relating to Elbert County. There was no claim of surprise or prejudice resulting from surprise. Under these circumstances, if it is assumed there is a variance, it is clearly a case of immaterial variance. Cyc.Fed.Proc., §§ 31.61, 34.06, 35.12, 68.57.
 
 
 20
 The findings of the trial court were adequately supported by the evidence, and we find no error. The case is therefore affirmed.